903 A.2d 446 (2006)
387 N.J. Super. 112
Mark I. SILVER, Plaintiff-Appellant,
v.
Dale C. SILVER, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 16, 2006.
Decided August 2, 2006.
*447 Lee M. Hymerling, Haddonfield, argued the cause for appellant (Archer & Greiner, attorneys; Mr. Hymerling and Timothy P. Haggerty, on the brief).
Amy R. Weintrob, Fort Lauderdale, FL, argued the cause for respondent (Jacobs & Barbone, attorneys; Ms. Weintrob, on the brief).
Before Judges FALL, GRALL and KING.[1]
The opinion of the court was delivered by
FALL, J.A.D.
Plaintiff Mark I. Silver appeals from an order entered in the Family Part on January 5, 2005, dismissing his domestic violence complaint that he had filed against defendant Dale C. Silver pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. The following factual and procedural history is relevant to our consideration of the issues presented on appeal.
The parties were married on September 12, 1987. Two children were born of their marriage: Jonathan, on August 27, 1989; and Jordan, on March 5, 1997. The parties separated in or about September 2003.
On March 9, 2004, plaintiff filed a complaint for divorce against defendant in the Family Part, Camden County, seeking, inter alia, a judgment dissolving their marriage, and awarding him sole custody of the children. At that point, Jordan was primarily residing with plaintiff, and Jonathan was primarily residing with defendant.
On July 27, 2004, a consent order was entered in the matrimonial action, restraining defendant from plaintiff's residences; providing defendant specified parenting time with Jordan, as supervised by her parents; requiring pick-up and drop-off of Jordan at the Warwick Condominiums in Atlantic City during those specified times; and restraining defendant from other contact with Jordan, pending further order. The order also provided:
6. This Order is entered by both parties without prejudice to any positions that he/she may take in connection with *448 the applications scheduled to be heard on August 6, 2004 and this litigation in general. Both parties are entering into this Order to avoid the filing of cross Orders to Show Cause to allow the issues to be more fully explored by the Court at the time of the August 6, 2004 hearing. This Order does not constitute a finding by the Court nor an admission by either party.
On that same date, July 27, 2004, plaintiff and defendant filed complaints against each other under the PDVA in the Atlantic City Municipal Court, alleging acts of assault and seeking the issuance of restraining orders. Each complaint provided the same narrative of the incident:
On 7-27-04 the victim and defendant got into an argument over a custody order. Both parties have visible injuries after a physical confrontation.
Both complaints stated there was no prior history of domestic violence, and that criminal complaints had been filed against both parties charging them with simple assault, N.J.S.A. 2C:12-1a(1).
The municipal court judge issued a temporary restraining order (TRO) on each complaint, and scheduled a final hearing in the Family Part, Atlantic County, for August 5, 2004. Both parties gave written statements to the police that contained conflicting versions of the incident. However, the parties agreed that the dispute between them centered over the supervised-visitation portions of the July 27 consent order that had been issued in the matrimonial action.
On August 5, 2004, the Family Part, Atlantic County, issued a consent order in the domestic violence actions, continuing the restraints contained in the July 27, 2004 TROs, without prejudice; incorporating additional restraints, essentially as contained in the July 27, 2004 matrimonial order; and setting forth additional specific supervised parenting time for defendant with Jordan.
On August 27, 2004, an order was entered in the matrimonial action, transferring the domestic violence complaints to the Family Part in Camden County, and scheduling a final hearing. That order also dealt with the issues of supervised parenting time, discovery, and non-dissipation of marital assets.
A final hearing on both domestic violence complaints was conducted in the Family Part on January 5, 2005. Defendant testified that on the evening of July 27, 2004, she drove, with her girlfriend Nancy Forrester, to the Warwick Condominiums in Atlantic City to pick up Jordan for the parenting-time session scheduled to commence at 4:15 p.m. She stated that her parents, who were to serve as supervisors, were on their way to Margate to pick up Jonathan from camp, and they were all to rendezvous later on the Atlantic City boardwalk.
Defendant testified she was waiting in her parked car in front of the Warwick Condominiums, when plaintiff drove up with Jordan. She stated that Jordan exited plaintiff's vehicle, and plaintiff inquired as to Jonathan's whereabouts, stating that he wanted to have dinner with Jonathan that night; defendant explained that Jonathan had declined the dinner invitation.
Plaintiff then entered his vehicle and left, leaving Jordan with defendant and Forrester. Defendant and Forrester then brought Jordan up onto the boardwalk where they sat on a bench to wait for defendant's parents and Jonathan.
Defendant stated that approximately seven or eight minutes later plaintiff returned in his vehicle, which he pulled close to the boardwalk area, and yelled to plaintiff, stating that because her parents were not there to supervise the parenting time, *449 as required by the court order, he wanted Jordan to come back with him. Defendant testified she left Jordan with Forrester on the boardwalk, and walked down to plaintiff's car to "try to reason with him[.]"
Defendant claimed that when she got to his car, plaintiff moved over to the passenger's side of his vehicle, and she entered the driver's side, then proceeded to explain that Forrester was there and that her parents would be coming soon. Plaintiff would not accept that explanation, and ordered her out of his car, stating "if you don't get out of my car, I'm going to hit you." He then began dialing a number on his cell phone. Defendant claimed that the following then occurred:
He started dialing, then when he finished dialing he looked at me, he was very angry and he raised his hand and I thought he was going to hit me, coming at me. I put my hands up to block him and he put his hand on my neck and started choking me.
Defendant stated that during the altercation "he also bit me on my finger and on my arm, but that was later." Defendant admitted she slapped and scratched plaintiff during the altercation, but asserted she did so to defend herself. She also stated that she had not entered plaintiff's vehicle with the intent to assault him.
A tape of the 9-1-1 calls by the manager of Warwick Condominiums and by plaintiff to the 9-1-1 operator was played in court, and we have been provided a copy of the 9-1-1 tape of the calls and a transcript thereof.
During her testimony, defendant also described an incident purportedly occurring on June 9, 2004, in Cherry Hill, during which she asserted that plaintiff had threatened to kill her. Upon inquiry by the court, defendant acknowledged that her domestic violence complaint stated there was no previous history of domestic violence. She explained the omission, as follows:
Honestly, Your Honor, the whole thing was extraordinarily upsetting. You know it all had gone way beyond [where] I thought it would ever go. It's extremely  it's still extremely upsetting to me at the moment and I was in a courthouse, you know, hauled off by the police in front of my children who were crying, who had witnessed this whole thing and I was  I don't know that I even read it. I think they put it in front of me and I signed it[.]
In his testimony, plaintiff provided a markedly different version of the incident. He stated that after he had dropped off Jordan, he telephoned his friend, Barbara Frank, who reminded him that defendant's parents were required to supervise defendant's parenting-time sessions. At that point, he turned his car around and went back. He stated that on his way back, he called defendant and told her he "was coming back and that [he] would wait for her parents to show up[,]" but that defendant responded, "I can't hear you, I can't hear you and she hung up." Plaintiff drove up near the boardwalk and waited in the car.
Shortly thereafter, defendant walked up to his car, "opened the door and jumped in the car and her back was to the passenger's side and she started  she started beating the heck out of me." He explained that as defendant was walking toward the vehicle, he had been talking on the cell phone with Barbara Frank. Plaintiff stated that defendant kept scratching him and trying to put her hands over his mouth to prevent him from talking on the phone. He testified that at that point he dialed 9-1-1, and, when he was able to get out of the car, ran into the Warwick Condominiums and asked the manager to call the police. Plaintiff denied choking or hitting defendant.
*450 Plaintiff also testified concerning prior alleged incidents of domestic violence. He stated that in March 2003 in Cherry Hill, during a discussion concerning his older children visiting them, defendant was drunk and pulled a knife and threatened him. Plaintiff further asserted that in April 2002, in Longport, defendant was drunk and during an argument she again pulled a knife and threatened him. Plaintiff denied that any incident had occurred on June 9, 2004. Upon questioning by the court, plaintiff acknowledged that his domestic violence complaint also stated there was no previous history of domestic violence. He explained that
I was going to check and put down about the prior incidents. As I was filling out those forms I had paramedics all over me and I was going to the hospital.
* * * *
The next day after contacting [my attorney] I was told that I could amend that and based upon that I believe [my attorney] moved to amend that statement of "no" and that was done right after I signed that. It was a mistake and I can tell you my blood pressure was significantly high and I was advised to go to the hospital.
Barbara Frank testified that she had a telephone conversation with plaintiff shortly after 4:10 p.m. on July 17, 2004, after plaintiff had dropped off Jordan, during which she reminded him that defendant's parents were required to be present during her parenting time. Plaintiff then told Frank he was going back to wait for defendant's parents, and the conversation terminated. Frank stated that plaintiff then called her back and explained that he had tried to call defendant, but she was unable to hear him on the cell phone.
Frank testified that as they were talking, plaintiff said, "[w]ait a minute, she's coming down off the boardwalk now." Frank stated that the next thing she heard was plaintiff saying, "[g]et out of my car. Ow, you're hurting me. Dale get out of my car, leave me alone."
Following summations by counsel for the parties, the trial judge made the following findings, in pertinent part:
[W]hat's clear is that there is a substantial amount of acrimony between the parties. Their relationship isn't working out, they're in the process of seeking a divorce, they have retained on the civil side counsel in substantial firms who are working to resolve issues between them and specifically with regard to the incident that precipitated this occurrence the notion of the visitation and supervised visitation.
The  the impetus for this event which occurred on July 27 had to do with a mother's desire to visit with the child, a father's concern for the well being of the child, and the existence of a prior court order which determined the boundaries and parameters of those visitations.
* * * *
[E]ach party checked the boxes that said there had been no prior acts of domestic violence. And today at trial they each testified that the other had either threatened them or pulled a knife on them or done improper things.... I both believe and disbelieve each party as to those allegations to the same extent, but find that if there's something there, that it is a continuing disagreement between them perhaps because where they found themselves in their relationships was not where they had expected to be. One child is with the father, one child is with the mother. Both children need a relationship with each parent.

*451 [Defendant] knew there was a supervision order and supervision by her parents. She testified, I believe not credibly, that she wasn't sure that it was in place yet. . . .
The 9-1-1 tapes are interesting because [defendant] in a very clear-speaking voice says, "He's choking me." But it was a very clear-speaking voice, she wasn't being choked. . . .
* * * *
I believe [defendant] got in the car without being invited. She's a bright woman, she suffered a memory lapse at the question of how'd she get in the car. I don't think she was invited into the car. But I think there's so much volatility and rage between these people that the emotional filters they utilize to listen to the language betrays the true meaning of the words that they speak to one another.

[Defendant] assaulted [plaintiff], she scratched him, she punched him, that's clear. She also, in the court's opinion, forced herself into the car, or committed an act of defiant trespass by not leaving the car when she was told to leave the car, and if in fact she was being choked she would have called 9-1-1.
Likewise, there's a question about at what point he got scratched and assaulted, because he didn't say, "She scratched me, she hit me," he said, "She won't get out of the car." They both were very emotional.
I can't find, even by a preponderance of the evidence  a preponderance of the credible evidence, that [plaintiff] choked or assaulted [defendant]. I can find by a preponderance of the evidence that [defendant] did assault and did refuse to leave [plaintiff's] presence. The difficulty is that [plaintiff's] description . . . of the events surrounding why it happened just doesn't jive with what happened, with what the testimony shows.
However, I don't believe that either party intended for the outcome to have been the outcome. I don't believe that [defendant] walked over to the car intending to beat up [plaintiff]. And I don't believe that [plaintiff], had [defendant] not gotten into the car, would have done anything to her. I believe he was genuinely making sure that his child was okay, and I think that whatever triggered the difficulty between the parties was situational and not intentional.

* * * *
I'm guided by Corrente[ v. Corrente, 281 N.J.Super. 243, 657 A.2d 440 (App. Div.1995)] because the entry of a final restraining order in a domestic violence case has tremendous consequences for the parties against whom it's entered. And domestic violence is a term of art as Corrente says which describes a pattern of abuse and a pattern of controlling behavior, and we don't have that here.

I don't think we have domestic contretemps, I think we have domestic stupidity, I think we have domestic distress, domestic unhappiness, domestic frustration, domestic panic. I believe [plaintiff] genuinely is concerned about the well being of his children. And I believe [defendant] clearly is working on healing those things that are frustrating her and too was concerned about the well being of her children. But the question here is whether this is a pattern of a relationship, are these people controlling each other, manipulating each other through the use of threats, through the use of physical force, through the use of  of other forms of abuse. And on the basis of the testimony presented to me I don't find that that is the case.

*452 I do find there was a defiant trespass,[2] I do find there was an assault, I do find that there was . . . an unwelcome touching, but . . . there were not contrapuntal acts of domestic violence on the basis of Corrente and Cesare[ v. Cesare, 154 N.J. 394, 713 A.2d 390 (1998)] which tells me to look at the pattern even more carefully and even if this particular event was  was minimal, if the minimal events have accumulated over many years then I should find an act of domestic violence; I don't find there was an act of domestic violence here.

[Emphasis added.]
The judge dismissed both domestic violence complaints, stating the parties must "create very clear boundaries for themselves and not put themselves in this situation." The judge warned defendant to "keep your hands off him."
On appeal, plaintiff presents the following arguments for our consideration:
POINT I
THE FAMILY PART COMMITTED ERROR BY CONCLUDING THAT CORRENTE AND CESARE MANDATED DISMISSAL OF MR. SILVER'S COMPLAINT NOTWITHSTANDING THE FAMILY PART'S FINDING THAT MRS. SILVER HAD COMMITTED ASSAULT AND TRESPASS. THE FAMILY PART'S CONCLUSION WAS AGAINST THE WEIGHT OF THE EVIDENCE AND MISAPPLIED APPLICABLE LAW.
POINT II
MRS. SILVER'S CONDUCT WAS NOT AMBIGUOUS AND CONSTITUTED AN EGREGIOUS ACT OF DOMESTIC VIOLENCE MADE EVEN THAT MUCH WORSE BECAUSE AT A TIME AT OR SURROUNDING PARENTING TIME WHEN THE PARTIES' SON JORDAN WAS NEARBY.
POINT III
THE PENDENCY OF SIMULTANEOUS DIVORCE PROCEEDINGS DOES NOT NEGATE THE IMPORTANCE OF AFFORDING DOMESTIC VIOLENCE PROTECTIONS WHEN JUSTIFIED BY THE RECORD.
POINT IV
IT IS NEVER A REASON TO DENY A FINDING OF DOMESTIC VIOLENCE WHEN THE FINDING IS SUPPORTED BY THE RECORD SIMPLY BECAUSE THE CONSEQUENCE OF THE VIOLATION OF THE ACT TO THE OFFENDING PARTY MAY BE SEVERE. THE FOCUS MUST BE UPON THE PROTECTION OF THE VICTIM.
POINT V
THE TRIAL COURT ERRED BY FAILING TO GRANT WEIGHT TO THE COURSE OF PRIOR CONDUCT.
This case initially presents the issue of whether the commission of acts of simple assault, N.J.S.A. 2C:12-1a(1), and trespass, N.J.S.A. 2C:18-3, against a person protected under the PDVA, constitutes "domestic violence." Here, although the trial judge found that defendant had committed acts of both assault and criminal trespass against plaintiff, the judge ruled that there was not "an act of domestic violence here."
N.J.S.A. 2C:25-19 provides, in pertinent part:

*453 a. "Domestic violence" means the occurrence of one or more of the following acts inflicted upon a person protected under this act by an adult or an emancipated minor:
* * * *
(2) Assault . . . . . . . N.J.S. 2C:12-1
* * * *
(12) Criminal trespass . . N.J.S. 2C:18-3.
In Kamen v. Egan, 322 N.J.Super. 222, 224-25, 730 A.2d 873 (App.Div.1999), the plaintiff had filed a complaint against the defendant, his daughter, under the PDVA seeking a restraining order based on a single act of trespass, unaccompanied by a violent act or threat thereof. The daughter had supervised visitation with her children in the home of plaintiff, who was the legal custodian of his grandchildren. Id. at 225, 730 A.2d 873. Defendant had appeared at plaintiff's house for visitation with her children on an unscheduled date, and at a time when the plaintiff was not at home. Ibid. When asked to leave three times by her stepmother defendant refused, stating she wanted to see her children. Ibid. When her stepmother threatened to call the police, defendant left. Ibid. The plaintiff then filed a domestic violence complaint against his daughter, founded on the predicate act of criminal trespass. Ibid.
Applying our standard of review to judicial factfinding, see Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974), we found that "the judge correctly concluded that defendant had committed an act of criminal trespass by entering plaintiff's home knowing that she was not licensed or privileged to do so on that occasion." Id. at 226, 323 A.2d 495. However, we noted that the finding of the predicate act of criminal trespass did not end the inquiry, stating:
It is clear that the Legislature did not intend that the commission of any one of these acts [contained in N.J.S.A. 2C:25-19a] automatically mandates the issuance of a domestic violence order. Corrente, supra, 281 N.J.Super. at 248, 657 A.2d 440; Peranio[ v. Peranio, 280 N.J.Super. 47, 54, 654 A.2d 495 (App. Div.1995)]. Domestic violence is ordinarily more than an isolated aberrant non-violent act. Indeed, the Act mandates that the court, in determining whether an act of domestic violence has occurred, consider the previous history of domestic violence between the parties including threats, harassment and physical abuse, N.J.S.A. 2C:25-29(a)(1), and the existence of immediate danger to person or property, N.J.S.A. 2C:25-29(a)(2). See Cesare v. Cesare, 154 N.J. 394, 402, 713 A.2d 390 (1998). While a single sufficiently egregious action may constitute domestic violence even if there is no history of abuse between the parties, a court may also determine that an ambiguous incident qualifies as domestic violence based on finding previous acts of violence. Ibid.

[Id. at 227-28, 323 A.2d 495.]
Accepting the factual findings of the trial judge, we concluded "that the judge erred in his legal conclusion that this single act of trespass, unaccompanied by violence or a threat of violence was sufficient to justify issuance of a restraining order under the Act." Id. at 228, 323 A.2d 495. We specifically noted that although the defendant's acts technically constituted a trespass, they "did not involve violence or a threat of violence." Ibid. Citing to our holdings in Corrente, supra, 281 N.J.Super. at 250, 657 A.2d 440, and Peranio, supra, 280 N.J.Super. at 56, 654 A.2d 495, we determined that "[u]nder these circumstances *454 we conclude that the acts complained of were nothing more than an ordinary domestic contretemps which the Act was never intended to address." Id. at 228-29, 654 A.2d 495. In so ruling, we stated:
The Act is intended to assist those who are truly the victims of domestic violence. It should not be trivialized by its misuse in situations which do not involve violence or threats of violence. In addition, we have previously expressed our concern that the Act may be misused in order to gain advantage in a companion matrimonial action or custody or visitation issue. See N.B. v. T.B., 297 N.J.Super. 35, 42, 687 A.2d 766 (App.Div.1997); Murray v. Murray, 267 N.J.Super. 406, 410, 631 A.2d 984 (App. Div.1993). We note that while the complaints that are the subject of this appeal were pending, there was also a custody and/or visitation proceeding pending.
[Id. at 229, 654 A.2d 495.]
Here, of course, at the time the subject domestic violence complaint was filed, the parties were engaged in matrimonial litigation involving, inter alia, hotly contested issues of custody and supervised parenting time.
In Corrente, supra, the plaintiff had filed a domestic violence complaint against her estranged husband, alleging an act of harassment, and contending that he had called her at work and threatened "drastic measures if plaintiff did not supply defendant with money to pay bills." 281 N.J.Super. at 244-45, 657 A.2d 440. He subsequently had the phone turned off. No previous history of domestic violence had been alleged. Ibid.
In first noting that the commission of any one of the predicate acts enumerated in N.J.S.A. 2C:25-19a does not automatically warrant issuance of a domestic violence restraining order, we emphasized
that acts claimed by a plaintiff to be domestic violence must be evaluated in light of the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment and physical abuse and in light of whether immediate danger to the person or property is present. N.J.S.A. 2C:25-29a(1) and (2). This requirement reflects the reality that domestic violence is ordinarily more than an isolated aberrant act and incorporates the legislative intent to provide a vehicle to protect victims whose safety is threatened.
[Id. at 248, 657 A.2d 440.]
We reversed the entry of a restraining order, finding that proof of the requisite elements "of the purpose to harass," a "course of alarming conduct" or "repeated acts intended to alarm or seriously annoy another" for establishment of "harassment," were absent. Id. at 249, 657 A.2d 440. We further stated:
Separate and apart from these evidential insufficiencies which preclude a finding of the predicate act of harassment, defendant's conduct was plainly never contemplated by the Legislature when it addressed the serious social problem of domestic violence. Plaintiff's complaint asserted there was no history of domestic violence, and there was no finding by the judge of a history of abuse or an immediate threat to safety. What occurred between these parties, whose relationship had ended and who were living apart, was conflict over finances and possession of the marital premises. During an argument, tempers flared and defendant threatened drastic measures. He carried out this threat with the childish act of turning off the phone. While this was not conduct to be proud of, plaintiff was neither *455 harmed (except in the most inconsequential way) nor was she subjected to potential injury. As such, the invocation of the domestic violence law trivialized the plight of true victims of domestic violence and misused the legislative vehicle which was developed to protect them. It also had a secondary negative effect: the potential for unfair advantage to a matrimonial litigant. . . .
* * * *
The domestic violence law was intended to address matters of consequence, not ordinary domestic contretemps such as this. We conclude that on plaintiff's puny proofs, the domestic violence order was unwarranted.
[Id. at 250, 657 A.2d 440.]
Likewise, in Peranio, supra, we reversed entry of a domestic violence restraining order because there was no finding by the trial court that the defendant had uttered the statement, "I'll bury you," to the plaintiff with the purpose to harass her, nor was there a course or repeated acts of alarming conduct. 280 N.J.Super. at 55, 654 A.2d 495.
We view the task of a judge considering a domestic violence complaint, where the jurisdictional requirements have otherwise been met, to be two-fold.
First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19a has occurred. See N.J.S.A. 2C:25-29a (stating that "the standard for proving the allegations in the complaint shall be by a preponderance of the evidence"). In performing that function, "the Act does require that 'acts claimed by a plaintiff to be domestic violence. . . be evaluated in light of the previous history of violence between the parties.'" Cesare, supra, 154 N.J. at 402, 713 A.2d 390 (quoting Peranio, supra, 280 N.J.Super. at 54, 654 A.2d 495). Stated differently, when determining whether a restraining order should be issued based on an act of assault or, for that matter, any of the predicate acts, the court must consider the evidence in light of whether there is a previous history of domestic violence, and whether there exists immediate danger to person or property. See N.J.S.A. 2C:25-29a(1) and (2).
Here, the trial judge found that defendant had committed an act of assault against plaintiff, as well as an act of criminal trespass. Indeed, the record reflects that plaintiff was scratched and was bleeding to the extent that he required medical attention.[3] Although the trial court permitted testimony from both parties concerning prior allegations of acts of domestic violence  which included purported threats by defendant to use a knife against plaintiff  the finding by the judge that he "both believe[d] and disbelieve[d] each party as to those allegations to the same extent" is not clear. In other words, we cannot discern from this record which of the prior alleged acts of domestic violence the court found had occurred, if any. However, the trial judge did find, by a preponderance of the evidence, that defendant had committed acts of assault and criminal trespass against plaintiff; thereby, defendant had committed acts of "domestic violence," as defined by N.J.S.A. 2C:25-19a.
The second inquiry, upon a finding of the commission of a predicate act of domestic violence, is whether the court should enter a restraining order that provides *456 protection for the victim.[4] As we noted in Kamen, supra, the Legislature did not intend that the commission of one of the enumerated predicate acts of domestic violence automatically mandates the entry of a domestic violence restraining order. 322 N.J.Super. at 227, 730 A.2d 873. See also Corrente, supra, 281 N.J.Super. at 248, 657 A.2d 440; Peranio, supra, 280 N.J.Super. at 54, 654 A.2d 495.
In Kamen, supra, for example, although the predicate act of trespass had occurred, we concluded that a domestic violence restraining order was not warranted because the trespass was "unaccompanied by violence or a threat of violence[.]" 322 N.J.Super. at 228, 730 A.2d 873. Here, in contrast, the act of trespass was accompanied by an act of violence in the form of an assault.
This second inquiry, therefore, begins after the plaintiff has established, by a preponderance of the evidence, the commission of one of the enumerated predicate acts "upon a person protected under this act by an adult or an emancipated minor[.]" N.J.S.A. 2C:25-19a. Although this second determination  whether a domestic violence restraining order should be issued  is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29a(1) to -29a(6), to protect the victim from an immediate danger or to prevent further abuse. See N.J.S.A. 2C:25-29b (stating that "[i]n proceedings in which complaints for restraining orders have been filed, the court shall grant any relief necessary to prevent further abuse") (Emphasis added).
In Kamen, supra, since there was no act of violence or threat thereof, we found no need or basis for entry of a domestic violence restraining order because there was no immediate danger to the plaintiff and the order was not necessary to prevent further abuse. 322 N.J.Super. at 228, 730 A.2d 873. Here, the record does not necessarily support such a finding. On the one hand, the judge found there was "volatility and rage" and a "substantial amount of acrimony" between the parties, and that plaintiff had committed an act of assault against plaintiff that necessitated medical treatment, as well as a trespass. On the other hand, the judge found "that whatever triggered the difficulty between the parties was situational and not intentional." However, the judge declined to characterize the incident as matrimonial contretemps.
Although it might be inferred from the conclusion of dismissal reached by the trial judge that he did not believe plaintiff was in immediate danger and that a restraining order was not necessary to prevent further abuse, the judge appears to have based his finding that "domestic violence" had not occurred on his determination that the record did not support a finding that there had been "a pattern of abuse and a pattern of controlling behavior."
Although it is clear that a pattern of abusive and controlling behavior is a classic characteristic of domestic violence, see Cesare, supra, 154 N.J. at 397-98, 713 A.2d 390, the need for an order of protection upon the commission of a predicate act of "domestic violence," as specifically defined in N.J.S.A. 2C:25-19a, may arise even in the absence of such a pattern where there is "one sufficiently egregious action[.]" Id. at 402, 713 A.2d 390.
*457 Therefore, we are constrained to vacate the order dismissing plaintiff's domestic violence complaint, reinstate the TRO, and remand the matter for a further hearing that focuses on this second step in the analysis. Specifically, having found that defendant committed the predicate act of assault  an act of violence  and an act of criminal trespass, and given the findings of an acrimonious relationship, manifested by volatility and rage, the trial court should determine whether a domestic violence restraining order is necessary to protect plaintiff from immediate danger or further acts of domestic violence. In that connection, the court should consider and make specific findings on the previous history of domestic violence, if any, between the plaintiff and defendant, and how that impacts, if at all, on the issue of whether a restraining order should issue.
The order of dismissal is reversed, the TRO reinstated, and the matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] Judge King did not participate in argument on this appeal. However, with consent of counsel, he has joined in this opinion.
[2] We note that plaintiff's complaint did not allege acts of domestic violence based on the cause of action of "trespass." However, there has been no cross-appeal from that finding.
[3] Photographs of plaintiffs appearance following the incident were marked into evidence at the January 5, 2005 hearing but have not been included in the record on appeal.
[4] The term "victim of domestic violence" is defined by N.J.S.A. 2C:25-19d as a person protected under the act who has been subjected to domestic violence by, inter alia, a spouse.