# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3691-17T4

M.L.,

    Plaintiff-Respondent,

v.

P.K.T.,

    Defendant-Appellant.

_____

Submitted January 29, 2019 – Decided March 1, 2019

Before Judges Yannotti and Rothstadt.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FV-13-1044-18.

Law Offices of Jef Henninger, attorneys for appellant (Dominique Tonacchio, on the briefs).

South Jersey Legal Services, Inc., attorneys for respondent (Cadence S. Hulme, on the brief).

PER CURIAM

Defendant appeals from a final restraining order (FRO) entered on March 14, 2018, pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.[1]  We affirm.

On February 20, 2018, plaintiff filed a domestic violence civil complaint against defendant, and alleged that defendant had been harassing her.  A municipal court judge issued a temporary restraining order (TRO) that day.  On March 14, 2018, the trial court conducted an evidentiary hearing on plaintiff's application for a FRO.

At the hearing, plaintiff testified that defendant had been her boyfriend. Plaintiff stated that in September 2017, she told defendant they could not be friends and he should not contact her.  Plaintiff blocked defendant's messages on the social media site Instagram.

However, according to plaintiff, defendant "messaged" her on Instagram using a different user name.  Plaintiff testified that defendant sent her a naked photograph of herself.  He said she was being immature in blocking him, and he was going to put her pictures "all over the internet."  Plaintiff stated that she "got scared" and did not know what to do.  Plaintiff unblocked defendant's

---

[1]  In this opinion, we refer to the parties and others by their initials, to protect their identities.

A-3691-17T4

number and responded to his message. She told him that if he put her pictures on the Internet, she would go to the police.

Plaintiff testified that sometime in January or February 2018, she ran into defendant at the gym where she worked out. She ran upstairs. She stated that on her social media Snapchat, she was "snapping" how uncomfortable she was being at the gym while defendant was there. At some point, plaintiff noticed defendant was watching her "snaps" and she tried to block him from doing so. Plaintiff stated that defendant watched her whole story on Snapchat, and she felt "really uncomfortable."

Plaintiff further testified that she purchased tickets to see a movie on the evening of February 15, 2018. That evening, it was raining hard. Plaintiff stated that she went out to her car to leave for the movie and she noticed a black car parked in the street outside her home. The car was running and the lights were on. Because she had forgotten her keys, plaintiff went back into the house.

About ten minutes later, plaintiff came out of the house and noticed that the car was still there. She thought it was "weird" because this ordinarily does not happen on her street. Because it was raining hard, she could not see the make of the car or who was in it. Plaintiff just saw lights coming from the dashboard. She drove off.

A-3691-17T4

Plaintiff returned home around 1:00 a.m.; however, nothing was going on at that time. Plaintiff spoke with her neighbor the next day. Her neighbor also saw the black car, approached it to speak with the driver, and later called police. Plaintiff showed her neighbor defendant's photo and her neighbor said he was one-hundred percent sure that was the person he saw sitting in the car outside plaintiff's home.

Plaintiff also testified that she dated defendant for about eleven months, and then on-and-off for "a little bit." The relationship went on for about a year-and-a-half. They broke up several times, but defendant had always been able to contact her "under different user names." Plaintiff stated, however, that "when it was over, it was over and [she] asked him to stop."

Plaintiff noted that after defendant sent her the naked photo of herself, he sent her a message indicating that he was "really drunk" at the time. She thought defendant was not "getting it" and even though he had threatened her, she wanted to "keep it like simple" and told him not to speak to her "ever again."

J.M., plaintiff's neighbor, testified that on an evening in February 2018, at around 8:00 or 9:00 p.m., he noticed a small, black car parked across the street in front of his house. The car was running and its lights were on.

4

About an hour later, J.M. noticed that the car was still there, still running with the lights on. J.M. waited another hour and then went out to the car. He tapped on the window and asked the person in the car if he was "all right." J.M. identified defendant as the person he saw in the car.

J.M. testified that defendant would not look at him. He said defendant was "just looking at his phone." J.M. asked defendant if he lived in town, but defendant would not look at him. J.M. also asked if defendant lived on that street, and defendant gave him what J.M. said was a dirty look. J.M. told defendant he was going to call 9-1-1.

J.M. called and waited outside for the State Police to arrive. About a half-hour or forty minutes later, J.M. saw the car speed off, with the State Police following. J.M. got into his car and drove down to the place where the Trooper had pulled defendant over.

The Trooper asked J.M. what was going on, and J.M. said he was the person who called 9-1-1. J.M. told the Trooper he had been informed defendant had been harassing his neighbor. According to J.M., the Trooper stated that defendant had been arrested for driving under the influence.

On cross-examination, J.M. testified that he could not identify the type of car that was parked on the street. He just knew it was "a small black car." He

A-3691-17T4

also said it was pouring rain at the time. J.M. further testified that he recorded the license plate number and gave it to the State Police. He stated that he was "absolutely positive" defendant was the person he saw in the car.

Defendant testified that he was not the person in the car parked in front of plaintiff's home on the evening of February 15, 2018. He said he had never seen J.M. before. Defendant also denied he was arrested in February 2018, or contacted by the State Police. Defendant stated that he read the TRO and plaintiff's allegation was a malicious lie. He admitted, however, that about a week before the incident on February 15, 2018, he saw plaintiff at the gym.

Defendant testified that he saw plaintiff at the gym, but he did not go there to see plaintiff. He stated that he goes to the gym every day after work. He testified that on average, he would see plaintiff at the gym every two or three weeks, and he denied that he bothered her.

Defendant stated during the evening after he saw plaintiff at the gym, he went on Snapchat and saw plaintiff's name pop up on his "feed with [his] friends." He was surprised because plaintiff previously had blocked him. Defendant thought plaintiff had unblocked him and he was now able "to view." Defendant viewed plaintiff's "story" and noted that she had referred to him as "her psychotic ex-boyfriend." He claimed he did not send her any message. He

also stated that he had apologized to plaintiff for sending the picture to her, and that his apology was genuine.

On cross-examination, defendant testified that he drives a black Honda Civic. He stated that on February 15, 2018, he worked until 9:00 p.m. and he was back at home by 9:30 p.m. He claimed he went "right to bed." He said he had never been arrested, and does not drink because of certain medication that he takes.

Defendant's mother testified that on February 15, 2018, defendant was residing with his grandmother. She said that evening, defendant sent her a text message around 7:00 or 8:00 p.m. She testified that he was at work. She stated that defendant was not arrested that night. She also stated that in September 2017, plaintiff called her and told her defendant had been threatening her. She was surprised because she thought plaintiff loved defendant. She told defendant not to contact plaintiff any more.

Defendant's grandmother testified that defendant had been living with her, and she saw him every day. She stated that defendant sometimes works overtime, but he is usually home by around 7:00 p.m. Because defendant had not come in by 8:00 p.m., she sent a text message to defendant's mother, and she apparently contacted him. Defendant's mother reported that defendant was still

working. Defendant's grandmother said defendant returned home at around 9:30 p.m. and he was "dirty and tired." According to defendant's grandmother, defendant was at home the whole night.

After the attorneys provided summations, the judge placed an oral decision on the record. The judge found that defendant committed an act of harassment, as defined in N.J.S.A. 2C:33-4. The judge noted that the parties had a dating relationship, but there were times when they were not "together" and plaintiff blocked defendant from sending her messages.

The judge pointed out that in September 2017, defendant indicated he was unhappy with being blocked, and he threatened to put a naked photo of plaintiff on the Internet. The next day, defendant sent plaintiff a text apologizing. The judge also noted that several months later, defendant saw plaintiff at the gym, and followed her story about seeing him on the Internet.

The judge found that defendant's car was the black car that was parked outside plaintiff's home for several hours during the evening of February 15, 2018. The judge noted that J.M. observed the car and identified defendant as the person he saw in the car. The judge pointed out that J.M. was one-hundred percent sure defendant was the person he observed. The judge found J.M.'s

testimony to be credible. The judge observed that plaintiff corroborated J.M.'s testimony.

The judge determined that defendant's act in sitting in a car for several hours outside plaintiff's home constituted harassment. The judge noted that in the past, defendant threatened to post plaintiff's naked photo on the Internet. He apologized, but later ran into her at the gym and "followed" her story on the Internet. The judge decided that a FRO was necessary to protect plaintiff from future acts of domestic violence. The judge entered a FRO dated March 14, 2018. This appeal followed.

On appeal, defendant argues that plaintiff failed to present sufficient evidence to support the judge's factual finding that he parked a car outside plaintiff's home on February 15, 2018, or the conclusion that the incident rose to the level of harassment under N.J.S.A. 2C:33-4. He also contends he could not have harassed plaintiff by threatening to post her photograph online because he was upset, intoxicated, and confused at the time. He claims he had no purpose or intent to harass plaintiff. In addition, defendant argues that even if plaintiff presented sufficient evidence to support a finding that he engaged in an act of harassment, the judge erred by finding a FRO was necessary to protect plaintiff.

We will not disturb factual findings of the trial court unless they "are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). Furthermore, we accord special deference to the factual findings of the Family Part because of that court's "special jurisdiction and expertise in family matters[.]" Id. at 413.

In determining whether to issue an FRO, the court first must determine whether the plaintiff has established by a preponderance of the evidence that the defendant has committed a predicate act of domestic violence, as defined in N.J.S.A. 2C:25-19(a). Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). The court also must determine, by considering the factors enumerated in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), whether a FRO is necessary "to protect the victim from an immediate danger or to prevent further abuse." Id. at 127.

The PDVA provides that harassment as defined in N.J.S.A. 2C:33-4 is a predicate act of "domestic violence." N.J.S.A. 2C:25-19(a)(13). Harassment is deemed to be a petty disorderly persons offense "if, with purpose to harass another," the actor:

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely

inconvenient hours, or in offensively course language, or any other manner likely to cause annoyance or alarm;

b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

[N.J.S.A. 2C:33-4(a) to -4(c).]

"A finding of a purpose to harass may be inferred from the evidence presented" and "[c]ommon sense and experience may inform that determination." State v. Hoffman, 149 N.J. 564, 577 (1997). Furthermore, for purposes of N.J.S.A. 2C:33-4(a), "annoyance means to disturb, irritate, or bother." Id. at 579-80.

We are convinced there is sufficient credible evidence in the record to support the trial court's finding that defendant engaged in the harassment of plaintiff, as defined in N.J.S.A. 2C:33-4. The record supports the judge's finding that on the evening of February 15, 2018, defendant parked his car in the street outside of plaintiff's home, where it remained for several hours with the engine running and the lights on.

As noted, J.M. identified defendant as the person who was in the car. The judge found J.M.'s testimony to be credible, and it was corroborated by

plaintiff's testimony that she saw the black car parked in the street by her residence. We must defer to the judge's findings where, as here, "the evidence is largely testimonial and involves questions of credibility." Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

The record also supports the judge's determination that the incident constituted harassment under N.J.S.A. 2C:33-4. There is sufficient credible evidence in the record to support the judge's finding that defendant engaged in a course of alarming conduct, and did so with the purpose to harass plaintiff.

We are also convinced that the record supports the judge's conclusion that a FRO was required to protect plaintiff from further acts of harassment. The judge considered the parties' relationship, plaintiff's testimony that she wanted to be left alone, and defendant's threat to place her photographs on the Internet. The judge also considered defendant's admission that he ran into plaintiff at the gym and thereafter "followed" her story about the incident at the gym on Snapchat.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION