# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0009-20

I.P.,[1]

    Plaintiff-Respondent,

v.

S.B.,

    Defendant-Appellant.

_____

        Submitted September 13, 2021 – Decided September 24, 2021

        Before Judges Sabatino and Mayer.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-2064-20.

        S.B., appellant pro se.

        I.P., respondent pro se.

PER CURIAM

---

[1] In accordance with <u>Rule</u> 1:38-3(d)(10), we identify the parties by initials.

Defendant S.B. appeals from a July 24, 2020 final restraining order (FRO) issued to plaintiff I.P. accordance with the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35.  We affirm.

We presume the parties are familiar with their disputes arising before and after their divorce.  The following is a brief summary of the facts relevant to this appeal.

Plaintiff and defendant are divorced and share custody of their two children, an eleven-year-old girl and a nine-year-old boy.  As part of the divorce agreement incorporated into their judgment of divorce, defendant is allowed parenting time every other weekend and certain holidays.[2]  The couple have difficulty coparenting and a parenting coordinator was appointed to address parenting time issues.

The incident giving rise to the issuance of a temporary restraining order (TRO) began on June 26, 2020.  Defendant drove to plaintiff's house to pick up the children.  Because the children were not waiting outside for him, defendant proceeded to ring the doorbell continuously for several minutes.  When no one

---

[2]  We note the parties are attorneys licensed to practice law in New Jersey.  The parties represented themselves during the divorce proceedings and are self-represented on appeal.

opened the door, defendant called the police. After speaking to the police, defendant left without the children. Plaintiff then applied for, and obtained, a TRO alleging harassment against defendant.

The following individuals testified during the FRO trial: plaintiff, plaintiff's mother, plaintiff's cousin, plaintiff's former boyfriend, defendant, and the parties' parenting coordinator.

The parenting coordinator confirmed he watched the video of defendant ringing plaintiff's doorbell the day of the incident. The coordinator testified the parties should have limited contact due to their mutual inability to communicate. The judge accepted the parenting coordinator's testimony "without reservation."

Plaintiff's witnesses described prior incidents between plaintiff and defendant. Despite a court order precluding defendant from entering plaintiff's home without permission, plaintiff's witnesses testified defendant "would cross the threshold and enter into the house despite plaintiff's repeated requests that he remain outside the house proper." In assessing credibility, the judge concluded plaintiff's witnesses "answered . . . questions directly" and "had clear recollection of the specific observations."

Defendant's recollection of the events of June 26, 2020 differed. He told the judge that because plaintiff and the children would refuse to open the door,

3

he rang the doorbell more than once. The judge found defendant became frustrated because the children were not ready at pickup time, and defendant "felt justified in leaning on the bell."

Defendant also denied entering plaintiff's home without her permission. However, the judge concluded plaintiff's former boyfriend, who was no longer in a relationship with plaintiff, testified credibly to seeing defendant enter plaintiff's home on thirty to fifty occasions over plaintiff's objection. Such actions were contrary to a court order.

At trial, the judge watched the doorbell camera video introduced as evidence by plaintiff.[3] The judge saw defendant ringing the doorbell "constantly for several minutes." He further explained, "[p]laintiff ignored [defendant]'s ringing bell for five to six minutes." According to the judge, defendant conceded the incident was not the first time he would ring the doorbell multiple times because plaintiff often withheld the children from his parenting time. The judge stated "[i]t is beyond dispute that someone ringing the doorbell for five to six consecutive minutes is enough to seriously annoy or alarm someone." Based on the June 26, 2020 incident and the prior history of abuse described by plaintiff's

---

[3] Neither party provided a copy of the doorbell camera video as part of the record on appeal. In the absence of the video, we accept the judge's description of the events on June 26, 2020.

A-0009-20

witnesses, the judge concluded the "cumulative effect surely had a detrimental impact on the plaintiff and her ability to live her life without interference."

The judge determined both parties bore responsibility for escalating the situation on June 26 because "[t]here [was] no legitimate reason for [defendant] ringing the bell incessantly nor [was] there . . . a legitimate reason for [plaintiff] not opening up the door." The judge found defendant's conduct evidenced an intent to alarm or seriously annoy plaintiff and therefore constituted harassment. In addition, the judge determined an FRO was necessary to protect plaintiff from further harassment based on the parties' history.

On appeal, defendant claims the record lacked sufficient evidence in support of the issuance of the FRO. We disagree.

In a domestic violence case, we owe substantial deference to a family judge's findings, which "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 412 (1998) (citing Rova Farms Resort, Inc. v. Invs Ins. Co., 65 N.J. 474-484 (1974)). This is particularly true where the evidence is testimonial and implicates credibility determinations. Ibid. (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). We will not overturn a judge's factual findings and legal conclusions unless we are "convinced that they are so manifestly unsupported

A-0009-20

by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Rova Farms Resort, Inc., 65 N.J. at 484).

When determining whether to grant an FRO under the PDVA, a judge must undertake a two-part analysis. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). First, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19a has occurred." Id. at 125. Second, the judge must determine whether a restraining order is necessary to protect the plaintiff from future acts or threats of violence. Id. at 127.

Under the first prong, plaintiff alleged defendant committed the predicate act of harassment under the PDVA. A person is guilty of harassment where, "with [the] purpose to harass another," he or she:

> Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4(c).]

Harassment requires the defendant to act with the purpose of harassing the victim. J.D. v. M.D.F., 207 N.J. 458, 486 (2011). A judge may use "[c]ommon sense and experience" when determining a defendant's intent. State v. Hoffman,

A-0009-20

149 N.J. 564, 577 (1997) (citing State v. Richards, 155 N.J. Super 106, 118 (App. Div. 1978)).

Having reviewed the record, we are satisfied there was sufficient evidence supporting the judge's determination that defendant harassed plaintiff consistent with N.J.S.A. 2C:33-4(c). Harassment includes acts of alarming conduct done with the purpose to alarm or seriously annoy, such as "repeated communications directed at a person that reasonably put that person in fear for his [or her] safety or security or that intolerably interfere with that person's reasonable expectation of privacy." State v. Burkert, 231 N.J. 257, 284-85 (2017).

Using his common sense and experience, the judge noted defendant's evident purpose to harass by ringing the doorbell incessantly for five to six minutes, coupled with defendant's repeated violation of a court order precluding his entry into plaintiff's home without her permission. Based on these acts, the judge reasonably determined defendant's conduct seriously annoyed plaintiff and interfered with her reasonable expectation of privacy.

We next consider defendant's claim the judge erred in finding plaintiff required an FRO to protect her from future acts of domestic violence. In determining whether a restraining order is necessary, a judge must evaluate the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6) and, applying those

factors, decide whether an FRO is required "to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127. Whether a restraining order should be issued depends on the seriousness of the predicate offense and "the previous history of domestic violence between the plaintiff and defendant including previous . . . harassment. . . ." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995).

Here, based on the credible testimony and video evidence, the judge found plaintiff required an FRO to protect her from further acts of harassment and ensure a reasonable expectation of privacy. We are satisfied there was sufficient evidence in the record to support the judge's findings under both Silver prongs.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0009-20