**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0722-20

J.R.S.,

    Plaintiff-Respondent,

v.

N.G.,

    Defendant-Appellant.

_____

Submitted October 7, 2021 – Decided November 30, 2021

Before Judges Alvarez and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FV-18-0227-21.

The Tormey Law Firm, attorneys for appellant (Brent DiMarco, on the brief).

Skoloff & Wolfe, PC, attorneys for respondent (Patrick T. Collins, on the brief).

PER CURIAM

N.G. appeals the October 19, 2020, final restraining order (FRO) issued under the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35, prohibiting her from contacting J.R.S. N.G. now claims she did not commit a predicate act as required by the statute and that her conduct did not qualify as domestic violence. See N.J.S.A. 2C:25-19; Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006). For the reasons stated by the trial judge at the conclusion of the two-day hearing, we affirm.

The parties' four-year relationship ended in 2019. Despite J.R.S. repeatedly requesting N.G. not contact him, she sent hundreds of texts and frequently tried calling him. She changed her phone number at least a dozen times in order to avoid the effect of J.R.S. blocking her calls. J.R.S. ignored N.G.'s attempts to communicate for approximately a year and a half.

On February 26, 2020, J.R.S.'s attorney wrote to N.G. as follows: "[I]t is imperative that you no longer contact [J.R.S.] directly or indirectly: you may not attempt to reach him by phone, text, email or in person, and you may not contact third parties about him or in an attempt to reach him." After receiving the letter, N.G. immediately attempted to contact J.R.S.; her communication efforts abated briefly, but then resumed.

On August 15, 2020, N.G. drove 230 miles to J.R.S.'s out-of-state beach house in a gated community.  Fearing she could not enter through the security gate, she parked her car and walked along the beach to the rear of J.R.S.'s home.  N.G. let herself in through an unlocked sliding glass door.  While alone in the house, N.G. called her cell phone from J.R.S.'s land line so she would have his number.  J.R.S. testified that when he returned home that evening, the lights were off, and he heard footsteps on the floor above him.  Once he realized N.G. was there, J.R.S. helped her locate her car because she could not recall where she had parked.  After they returned to J.R.S.'s home, they drank tea and talked for approximately an hour.  J.R.S. reiterated that he did not want to continue the relationship or speak to N.G. again.  N.G. left.  After she arrived at her hotel, she called and texted J.R.S. to see if he wanted to join her for a drink.  The following morning, she called and texted to see if he wanted to have coffee before she returned to New Jersey.  He did not respond to either overture.  Instead, he called his lawyer and then called the police to obtain a temporary restraining order.

The trial judge presided over a two-day hearing.  During N.G.'s testimony, she acknowledged that the hundreds of text messages and phone calls may have been excessive.  But she insisted that when she and J.R.S. had agreed to end

their relationship, they also agreed to have a final conversation about it at some point in the future. She claimed she was only attempting to engage in that final conversation.

The judge found that J.R.S. established the predicate acts of trespassing, N.J.S.A. 2C:18-3, and harassment, N.J.S.A. 2C:33-4(c), by a preponderance of the evidence. See N.J.S.A. 2C:25-19; Silver, 387 N.J. Super. at 112. On appeal, N.G. does not dispute the judge's determination that she committed an act of criminal trespass when she entered J.R.S.'s home. N.G.'s behavior, which continued even after an attorney asked her to stop, amply established harassment—conduct committed with the purpose to annoy or seriously alarm. That N.G. may not have per se intended to harass J.R.S. does not negate her awareness that any communication from her was unwanted. That she knew her conduct was alarming to J.R.S. is established at least by her constantly changing phone numbers and her approach to J.R.S.'s home from the beach instead of the secured gate. Her continuing efforts allowed the judge to properly infer the purpose to harass. See R.G. v. R.G., 449 N.J. Super. 208, 226 (App. Div. 2017) (noting purpose may be inferred from facts, circumstances, prior conduct, common sense, and experience).

Having found both predicate acts based on ample credible evidence in the record, the judge proceeded to find the FRO necessary to protect J.R.S. from future harm. See Silver, 387 N.J. Super. at 126. This finding is also supported by ample credible evidence in the record. As the judge observed, N.G.'s own words established an obsessive, compulsive quality to her behavior, which posed an ongoing threat to J.R.S. Because both Silver prongs were met, the order was warranted.

Our standard of review is deferential. We are required to accord deference to the family court's factfinding. Cesare v. Cesare, 154 N.J. 394, 413 (1998). Our review of the judge's decisions regarding the law is less deferential, however, we only disturb them if based on a misunderstanding of the applicable legal principles. R.G., 449 N.J. Super. at 218. No such misunderstanding occurred here.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

5

A-0722-20