# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0637-25

Y.K.,[1]

      Plaintiff-Respondent,

v.

L.K.,

      Defendant-Appellant.

_____

Submitted May 18, 2026 – Decided May 27, 2026

Before Judges Sabatino and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FV-15-0072-26.

Horn Law Group, LLC, attorney for appellant (Jeff J. Horn, of counsel and on the brief).

Levin, Shea, Pfeffer & Goldman, PA, attorneys for respondent (Ian M. Goldman, of counsel and on the brief).

PER CURIAM

---

[1] We refer to the parties by their initials. <u>R.</u> 1:38-3(d)(10).

Represented by counsel, defendant L.K. appeals the Family Part's issuance of a Final Restraining Order ("FRO") against him on August 8, 2026, based on harassment, stalking, and contempt for violating a Temporary Restraining Order ("TRO"). Applying to the record the governing principles of the Prevention of Domestic Violence Act ("PDVA"), N.J.S.A. 2C:25-17 to -35, we affirm.

The background pertinent to defendant's appeal may be concisely stated as follows. Defendant and plaintiff Y.K. have been married for approximately fifteen years and have five minor children together. They have been separated since July 2025. Defendant is a businessman, while plaintiff is an accountant with a master's degree.

The marital relationship began to grow increasingly contentious throughout the summer of 2025. In late June 2025, the parties had several arguments regarding a dispute that defendant was having with one of his business associates. Defendant apparently wanted to enlist plaintiff's aid as an accountant to help with the situation. According to plaintiff's testimony, defendant reacted negatively to her insistence that he instead seek the help of a third party.

The parties' disagreements progressed, with various incidents occurring on separate occasions. Plaintiff recounted at trial—and defendant ultimately

A-0637-25

admitted to—(1) splashing a full bottle of water over plaintiff in frustration; (2) striking plaintiff with a pillow; and (3) using plaintiff's email account without her permission to send emails to his business associates while impersonating plaintiff.

More concerning behavior followed. On June 26, 2025, defendant took one of the parties' sons with him on a road trip to Texas. During that trip, he repeatedly sent plaintiff a series of increasingly aggressive messages, attempting to induce her to help solve his ongoing business dilemma. At this point in time, the parties agreed they henceforth would live separately from one another, with the children continuing to reside with plaintiff.

After returning to New Jersey, defendant came to the residence twice over the course of two days, engaging in behavior and continuing to text plaintiff in a manner she found to be "threatening."

On July 11, 2025, plaintiff filed for and was granted by the Family Part a TRO against defendant. The TRO modified defendant's visitation rights with the children to "supervised parenting time" to be conducted outside the marital home.

During July and August 2025, three additional TROs were granted to plaintiff against defendant, as he repeatedly violated the conditions of the

3

existing orders by: (1) coming by the residence without advance notice, including on one occasion obtaining the new lock code to the home from one of the parties' children and awakening plaintiff in her bedroom; (2) interacting with the children without proper supervision, such as picking them up from extracurricular activities and taking them for walks without plaintiff's knowledge when she was not home; (3) flying a drone over the residence; and (4) frequently attempting to contact plaintiff through phone calls and text messages. The police arrested defendant on August 1, 2025, and released him the following day.

As we noted above, defendant substantially admitted at the FRO hearing to having engaged in many of these above-described actions. Nonetheless, he contended that he had acted in a benign manner out of concern for his children's welfare.

After considering the parties' testimony, the trial judge found that plaintiff had proven by a preponderance of the evidence the requisite elements of the PDVA under the two-part test set forth in Silver v. Silver, 387 N.J. Super. 112, 125-26 (App. Div. 2006). Among other things, the judge found in her oral decision that plaintiff was more credible than defendant:

> The plaintiff testified in detail. She was clear. There was no attempt to exaggerate or mislead. And

her demeanor added to her credibility. And her testimony was corroborated by much of the testimony of this defendant. The defendant admitted facts that were not in his interest.

> The [c]ourt finds that the <u>defendant was not credible</u> . . . with respect to saying that although the defendant admitted being served with the initial restraining order and all of the amendments, that the defendant was acting unconsciously and really didn't – although read the restraining order, didn't really deny that he didn't know what was contained in the restraining order, but basically didn't follow the restraining order on numerous occasions.

> [(Emphasis added).]

After recounting the history of domestic violence between the parties, the judge then addressed the merits of plaintiff's FRO application. In particular, the judge found as follows:

> So, <u>I find that this plaintiff has proven</u> by a preponderance of the credible evidence that this <u>defendant had committed the predicate act of contempt on multiple occasions, [and] that this defendant had committed the predicate act of harassment through a course of alarming conduct, and repeatedly committed acts which is subsection (c) under the statute [N.J.S.A. 2C:33-4] with the sole purpose to alarm or seriously annoy the other[,] plaintiff</u>.

> This <u>is a classic case of a pattern of abusive and controlling behavior</u>, although the defendant said that he was doing it to support his family. The [c]ourt does not find that . . . the actions of the defendant line up with the words that he used. <u>This plaintiff has been in</u>

5

a domestic violence relationship. This is a matter of consequence.

> With respect to stalking, the whole course of the conduct from after the restraining order issuing through to the defendant's last encounter at the marital residence on . . . August 8th, when he showed up . . . at the house in the car at 12:30 p.m. rises to the level of stalking and has been proven by a preponderance of the credible evidence.

> This defendant, on multiple occasions, more than two, has kept a visual or physical proximity to this plaintiff, followed, threatened, observed, communicated to her, repeatedly committed harassment against her, which causes this plaintiff to suffer significant mental distress and would cause a reasonable person to fear this defendant.

[(Emphasis added).]

Having thus found defendant's commission of multiple predicate acts satisfying the first prong of Silver, the judge then addressed the second prong concerning the necessity of restraints:

> . . . There is a need for this restraining order[], as the second prong of Silver where the defendant has been – actions have become more and more aggressive. Plaintiff stated that she was walking on eggshells, that this defendant's behavior has changed, and that she has felt controlled by this defendant, and couldn't stop it herself and needed intervention from a restraining order.

> So, I am going to enter a restraining order against this defendant.

6

A-0637-25

[(Emphasis added).]

On appeal, defendant fundamentally argues that his conduct was benign and blown out of proportion by plaintiff. He further argues that plaintiff is merely trying to gain leverage in their divorce case in pursuing the present action against him.

The governing law on the underlying issues is clear. The Family Part is required to make two distinct determinations when deciding whether to issue an FRO under the PDVA: (1) "whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) had occurred"; and (2) whether, "upon a finding of the commission of a predicate act of domestic violence . . . the court should enter a restraining order that provides protection for the victim." Silver, 387 N.J. Super. at 125-26 (emphasis added); see also S.M.T. v. S.A., 483 N.J. Super. 532, 542 (App. Div. 2026).

Under Silver's first prong, in determining whether "a restraining order should be issued based on . . . any of the predicate acts [listed under N.J.S.A. 2C:25-19(a)], the court must consider the evidence in light of whether there is a previous history of domestic violence, and whether there exists immediate danger to person or property." Silver, 387 N.J. Super. at 125 (emphasis added).

A-0637-25

Three of the possible qualifying predicate acts of domestic violence specified under N.J.S.A. 2C:19(a) include "harassment" (N.J.S.A. 2C:19(a)(13)),[2] "stalking" (N.J.S.A. 2C:19(a)(14)), and "contempt of a domestic violence order pursuant to subsection [(b) of N.J.S.A. 2C:29-9] that constitutes a crime or disorderly persons offense." As we noted, the trial judge found that plaintiff had proven all three of these predicate acts, although one would alone suffice to support an FRO.

As to Silver's second prong, the court is to consider various factors under N.J.S.A. 2C:25-29(a)(1)-(7) in deciding whether an FRO is necessary to protect a victim of domestic violence from immediate danger or to prevent further acts of abuse. The Family Part "[need not] incorporate all of those factors into its findings when determining whether or not an act of domestic violence has been committed." Cesare v. Cesare, 154 N.J. 394, 401-02 (1998). The trial court is required to evaluate the conduct of a defendant "'in light of the previous history of violence between the parties.'" Ibid. (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)).

---

[2] N.J.S.A. 2C:25-19(a)(13) explicitly cross references N.J.S.A. 2C:33-4, which denotes the various acts that may be found to constitute "harassment."

A-0637-25

Our scope of review of an FRO on appeal is likewise well established and is "generally limited." T.B. v. I.W., 479 N.J. Super. 404, 412 (App. Div. 2024) (citing C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020)).  This limited standard of review is especially applicable when, as here, we are "considering an FRO issued by the trial judge at the conclusion of a bench trial." C.C., 463 N.J. Super. at 428.  "'We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are "specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples."'" T.B., 479 N.J. Super. at 412 (quoting C.C., 463 N.J. Super. at 428 (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011))).

In that vein, "'findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.  Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility.'" T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (quoting Cesare, 154 N.J. at 411-12).  That said, a Family Part judge's "purely legal decisions" are subject to de novo appellate review. C.C., 463 N.J. Super. at 428-29.

Having applied these standards, we conclude the trial court had ample evidential and legal grounds to conclude that plaintiff had proven both prongs

A-0637-25

of the Silver test and was entitled to the protection of an FRO under the PDVA. Although we are cognizant of defendant's claim that he did not intend to cause harm and had only acted in the interests of his children, we are obligated to defer to the Family Part judge's first-hand finding that defendant was not as credible in his testimony as plaintiff. Each of the predicate acts is supported by substantial credible evidence in the record.

Although we recognize that some of the described incidents were relatively minor in nature, other conduct—such as defendant's surprise entry to the house despite it having new lock codes and his use of a drone to fly over the house—easily qualify as acts of harassment, stalking, and contempt.

The record also supports the need for restraints, and that plaintiff's expression of ongoing fear was authentic and not a litigation-based contrivance.

In sum, the Family Part judge reasonably found that both prongs of Silver were met. We therefore uphold the entry of the FRO.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0637-25