# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1088-18T3

K.M.D.,

    Plaintiff-Respondent,

v.

R.A.D.,

    Defendant-Appellant.

_____

Submitted October 7, 2019 – Decided November 12, 2019

Before Judges Fasciale and Rothstadt.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Cumberland County, Docket No. FV-06-1232-18.

Helmer, Conley & Kasselman, PA, attorneys for appellant (Patricia B. Quelch, of counsel and on the brief).

Rutgers Domestic Violence Clinic, Rutgers Law, attorneys for respondent (Victoria Lynne Chase, of counsel and on the brief).

PER CURIAM

Defendant (the father) appeals from an August 8, 2018 final restraining order (FRO) entered against him in favor of plaintiff (the daughter) under the Prevention of Domestic Violence Act of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35. Judge Michael R. Ostrowski, Jr. conducted a two-day FRO hearing, entered the FRO, and rendered a detailed oral opinion. On October 9, 2018, Judge Ostrowski denied the father's motion for reconsideration, which the father also challenges on appeal. We affirm.

At the FRO hearing, the judge took testimony from three witnesses: the parties and the daughter's husband (the husband), who witnessed the incident.[1] The judge also admitted three pictures of the daughter's injuries from the incident into evidence. The judge, who noted that the case hinged on credibility, found the daughter credible, disbelieved the father (finding that the father was "completely devoid of credibility"), and rejected the husband's testimony, concluding that it was inconsistent and nonsensical. After considering the evidence and making thorough credibility findings, the judge entered the FRO against the father and dismissed the father's temporary restraining order (TRO) against the daughter.

---

[1] At the FRO hearing, the daughter testified that she planned to divorce the husband.

2

On appeal, the father argues that the judge erred by entering the FRO and dismissing the TRO. The father asserts that the evidence does not support the judge's findings. The father also contends that the judge mistakenly denied his request for a new trial, or alternatively, to supplement the record on reconsideration.

In a domestic violence case, we accord substantial deference to a judge's findings, which "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 412 (1998). We accord that deference especially when—like here—much of the evidence is testimonial and implicates credibility determinations. Ibid. We do not disturb the judge's factual findings and legal conclusions, unless we are "'convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)).

When determining whether to grant an FRO pursuant to the PDVA, the judge must make two determinations. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). Under the first Silver prong, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence,

A-1088-18T3

that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125.

In the daughter's complaint, she alleged that the father committed the predicate acts of harassment and assault. At the FRO hearing, the daughter testified that she lived in a house next to the father-in-law's suite. Both residences were on the same property, which the parties jointly owned. She explained that the father was drinking alcohol, was "very agitated," and "very angry." She testified that he entered her home, slammed a steel door against her "more than ten" times, which struck her side causing "bruises on [her] lip, [her] left] arm, [and her left] cheek." The father also pinched her arm producing further injury.

A person is guilty of harassment where, "with purpose to harass another," he or she:

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

[N.J.S.A. 2C:33-4(a) to (c).]

Harassment requires the defendant to act with the purpose of harassing the victim. J.D. v. M.D.F., 207 N.J. 458, 486 (2011). A judge may use "[c]ommon sense and experience" when determining a defendant's intent. State v. Hoffman, 149 N.J. 564, 577 (1997).

The judge found defendant guilty of harassment. "The ugly names, the name-calling, the pursuing, the slamming of the door, the holding of the door, the taunting . . . I do find all of that amounts to highly offensive communication, highly offensive behavior." The judge concluded that the father "exhibited signs of being under the influence of some type of substance and had alcohol on his breath," that he "got in [the daughter's] face," and that "he was so close that his spit was even getting on her." The judge further noted that the father "pursued [the daughter] for the purpose of continuing to taunt her, [to] harass her[,]" and that the father would not allow her to close the steel door. In addition to these detailed findings, the judge indicated the father called the daughter a "whore."

Although the judge found that the father primarily harassed the daughter, he also concluded that the father was guilty of simple assault, which occurs when a person "[a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another." N.J.S.A. 2C:12-1(a)(1). Bodily injury consists of

"physical pain, illness or any impairment of physical condition." N.J.S.A. 2C:11-1(a). The judge determined that the father's "purposeful [and] certainly reckless actions" injured the daughter. "She was hurt, and I have the pictures to show it." The judge concluded that the daughter's bruised left arm, swollen lip, and the discoloration on her cheek came from the father slamming the door against her. "[S]he did not exaggerate. She said it how it was."

Under the second Silver prong, a judge must also determine whether a restraining order is necessary to protect the plaintiff from future acts or threats of violence. 387 N.J. Super. at 127. The commission of one of the predicate acts of domestic violence set forth in N.J.S.A. 2C:25-19(a) does not, on its own, "automatically . . . warrant the issuance of a domestic violence [restraining] order." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995). Although that determination "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127.

The daughter testified she did not feel safe. She explained that the father used alcohol, smoked marijuana, and owned more than five guns. The daughter

6

stated he repossessed his guns after they were seized because of the ex-wife's restraining order against him. The judge found that the daughter retreated into her home but that "the danger followed her." The daughter testified that the father had an anger problem and that she feared him. Indeed, the only part of the father's testimony that was believable—according to the judge—was the father's admission that he previously threatened the daughter. "[G]iven [the father's] own admission about feeding her to the pigs, a threat to feed her to the pigs, and the fact that he pursued her[,]" the judge found that "the fear of further acts of domestic violence is real[.]" Thus, the judge concluded that the FRO was necessary to protect the daughter from "not only immediate danger . . . but [from] further acts of domestic violence."

We reject the father's remaining arguments pertaining to his reconsideration efforts, which included his attempt to either re-open the trial or supplement the record. The father maintains that reconsideration was appropriate because the daughter "provided the [judge] with incomplete and inaccurate information regarding the incident." The standard for reconsideration motions is clear:

> Reconsideration itself is "a matter within the sound discretion of the Court, to be exercised in the interest of justice[.]" It is not appropriate merely because a

litigant is dissatisfied with a decision of the court or wishes to reargue a motion, but

> should be utilized only for those cases which fall into that narrow corridor in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.

> [Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).]

"[T]he magnitude of the error cited must be a game-changer for reconsideration to be appropriate." Id. at 289.

In his oral opinion, the judge reiterated the daughter's testimony that she smelled alcohol on the father's breath. In rejecting the father's arguments, the judge also emphasized that he rejected the father and the husband's testimonies. The judge said there was no evidence that the daughter tried to mislead him.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1088-18T3