# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3388-19

O.T.,

    Plaintiff-Appellant,

v.

M.G.T., JR.,

    Defendant-Respondent.

_____

        Submitted April 28, 2021 – Decided May 25, 2021

        Before Judges Accurso and Enright.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FV-13-0924-20.

        Clifford E. Lazzaro, attorney for appellant.

        Respondent has not filed a brief.

PER CURIAM

Plaintiff O.T.[1] appeals from a March 27, 2020 order dismissing the temporary restraining order (TRO) she obtained against her husband, defendant M.G.T., Jr., under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm, substantially for the reasons set forth in Judge Stacey D. Adams' comprehensive oral opinion.

On January 21, 2020, plaintiff secured a TRO against defendant. Several days later, she moved to amend her TRO complaint. Plaintiff alleged defendant committed the predicate acts of harassment, N.J.S.A. 2C:33-4(a)-(c) and terroristic threats, N.J.S.A. 2C:12-3.

The final hearing was conducted over the course of several days. After the parties rested, plaintiff asked the judge to reconsider the denial of her application to amend her complaint to include an incident from December 2019, when defendant purportedly tried to push plaintiff out of a moving car. Upon revisiting her evidentiary ruling, Judge Adams permitted the amendment and allowed plaintiff to introduce an audio recording of the event, subject to additional cross-examination by defendant. Moreover, the judge granted

---

[1] We use initials to protect the privacy of the individuals involved in this appeal. R. 1:38-3(d)(9).

defendant's application to cross-examine plaintiff about a March 11, 2020 certification she filed in the parties' divorce proceedings.

Once the hearing ended, Judge Adams concluded no final restraining order (FRO) should issue against defendant, in part, because she found "plaintiff to be completely incredible." By way of example, the judge referred to plaintiff's March 11 certification, and determined it "directly contradict[ed] testimony that was given by the plaintiff." In addition to other "inconsistencies in her testimony," the judge found "plaintiff was crying on cue" "on more than one occasion." Further, the judge determined "plaintiff danced around questions and didn't give direct answers when she should have." Although the judge also found defendant was, at times, "belligerent" in his testimony and "coy with some of [his] answers," overall she found "defendant to be more credible than the plaintiff."

Additionally, the judge meticulously addressed plaintiff's amended complaint and concluded defendant did not commit the alleged predicate acts of terroristic threats or harassment. Referring to a conversation recorded by plaintiff, which she initiated by asking defendant if he wanted to kill her, the judge found defendant's response was not a "serious threat" against plaintiff, but rather "just conversation," as evidenced by the fact plaintiff waited ten days to

contact the police to report the alleged threat. Judge Adams further observed plaintiff's delayed decision to report defendant's purported threat coincided with him telling her he contacted the Division of Child Placement and Permanency. Accordingly, Judge Adams found plaintiff went to the police "to get a leg up in her [divorce proceedings], to get custody of [the parties'] children, and not because she was scared about something that happened in a joking fashion ten days earlier." Similarly, the judge found plaintiff's allegation that defendant tried to physically throw her out of a moving car was not borne out by the recording plaintiff produced from the alleged incident. The judge reasoned:

> There's no sounds of screaming from the plaintiff, there's no sounds of a tussle on that audio. All there is, is the unclicking of the seatbelts.
>
> Given the plaintiff's overall lack of credibility . . . I'm going to believe the defendant's version of the events, which is that he did get mad . . . and he pulled over the car and told her to get out.

Judge Adams similarly rejected the balance of plaintiff's complaint.

On appeal, plaintiff asserts the judge erred in finding plaintiff failed to establish the predicate acts she alleged and by declining to grant her an FRO. We are not convinced.

When determining whether to grant an FRO pursuant to the PDVA, the judge has a "two-fold" task. Silver v. Silver, 387 N.J. Super. 112, 125 (App.

4

Div. 2006). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. [2C:25-19(a)] has occurred." Ibid. The judge must construe any such acts in light of the parties' history to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the perpetrator." Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998); see N.J.S.A. 2C:25-29(a)(1). Second, if the court finds a plaintiff has established, by a preponderance of evidence, that a defendant has committed one of the enumerated predicate acts under the PDVA, the issuance of an FRO does not inexorably follow such a finding. Instead, the judge must consider the need for restraints by engaging in a separate inquiry, which involves an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6). Silver, 387 N.J. Super. at 126-27.

Here, plaintiff alleged defendant committed the predicate acts of harassment and terroristic threats. A person is guilty of harassment when, "with purpose to harass another," he or she:

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

[N.J.S.A. 2C:33-4(a)-(c).]

Harassment requires that a defendant act with the purpose of harassing the victim. J.D. v. M.D.F., 207 N.J. 458, 486 (2011). A judge may use "[c]ommon sense and experience" when determining a defendant's intent. State v. Hoffman, 149 N.J. 564, 577 (1997). The mere assertion that conduct is harassing is not sufficient. J.D., 207 N.J. at 484. Further, a "victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose." Id. at 487. "[T]he decision about whether a particular series of events rises to the level of harassment or not is fact-sensitive." Id. at 484.

Regarding the predicate act of terroristic threats,

a. A person is guilty of a crime of the third degree if he threatens to commit any crime of violence with the purpose to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience. . . .

b. A person is guilty of a crime of the third degree if he threatens to kill another with the purpose to put him in imminent fear of death under circumstances reasonably

6

causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out.

[N.J.S.A. 2C:12-3(a)-(b).]

Proof of terroristic threats must be assessed by an objective standard. State v. Smith, 262 N.J. Super. 487, 515 (App. Div. 1993). "The pertinent requirements are whether: (1) the defendant in fact threatened the plaintiff; (2) the defendant intended to so threaten the plaintiff; and (3) a reasonable person would have believed the threat." Cesare v. Cesare, 154 N.J. 394, 402 (1998).

In a domestic violence case, we accord substantial deference to a Family Part judge's findings, which "are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 412. We provide that deference especially when much of the evidence is testimonial and implicates credibility determinations. Ibid. Thus, we do not disturb a judge's factual findings and legal conclusions, unless we are "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)).

Additionally, we are mindful that initiating a domestic violence case while parties are engaged in matrimonial litigation can raise a cause for concern that

the former might have been instituted by a party to gain an advantage in the latter. Family judges cognizant of that potential must ensure, before entering an FRO, that a party's predicate acts, when sustained, constitute more than mere domestic contretemps. See, e.g., J.D., 207 N.J. at 475; Corrente v. Corrente, 281 N.J. Super. 243, 250 (App. Div. 1995). Judge Adams conducted this analysis and concluded no FRO was warranted. We defer to the judge's thoughtful findings in this regard because they were solidly grounded on her credibility findings, as well as other reliable evidence.

Given our standard of review and Judge Adams' extensive factual and credibility findings, her legal conclusions are unassailable. To the extent we have not addressed plaintiff's remaining arguments, we are satisfied they are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3388-19