# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0248-20

C.R.C., [1]

    Plaintiff-Respondent,

v.

F.J.C.,

    Defendant-Appellant.

_____

Submitted May 12, 2021 – Decided June 28, 2021

Before Judges Alvarez and Sumners.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FV-08-0274-21.

John C. Iannelli, attorney for appellant.

C.R.C., respondent pro se.

PER CURIAM

---

[1]  We use initials to protect the confidentiality of the participants in these proceedings.  R. 1:38-3(d).

Defendant appeals from a final restraining order (FRO) entered in favor of plaintiff, his estranged wife, pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant argues plaintiff failed to present sufficient proof to warrant a finding that his conduct constituted harassment within the meaning of N.J.S.A. 2C:33-4. We agree and reverse.

In a domestic violence case, we accord substantial deference to the family court's findings, which "are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974)). We accord that deference especially when much of the evidence is testimonial and implicates credibility determinations. Id. at 412. We do not disturb the court's factual findings and legal conclusions, unless we are "convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (quoting Rova Farms, 65 N.J. at 484).

When determining whether to grant an FRO pursuant to the PDVA, the trial court must make two determinations. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). Initially, we address whether the first Silver prong was satisfied, which is "whether the plaintiff has proven, by a preponderance of

2

the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125.

At trial, conducted via Zoom due to COVID-19, plaintiff alleged that the predicate act of harassment occurred. Harassment is defined in N.J.S.A. 2C:33-4, which provides in relevant part, that

> [A] person commits a petty disorderly persons offense if, with purpose to harass another, he:
>
> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> . . . .
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

Plaintiff testified that amid the separation from defendant she found a letter from him on her car windshield. She felt the letter "alarming," because it stated that: (1) when she attempted to get additional custody time with her daughter from her divorced husband, a different court acknowledged that she and defendant had a two-year stable marriage; (2) if they did not divorce, they could save legal fees and have money for her daughter's college expenses; and

3

(3) "neither one of us [will] win – I swear [] I would give my life just to have you, and the opposite to lose you."

Plaintiff maintained defendant violated the court's verbal order four days prior to receipt of the letter, directing defendant to have "no contact" with her or go to the marital property where only she and her daughter were living. The court, however, acknowledged that no written domestic violence restraining order was entered, stating that defendant was not to contact plaintiff although it "made . . . clear to [defendant] that he shouldn't have any . . . contact with plaintiff."

Plaintiff testified that on another day, she came home to find the cable television and internet service to her home, which was in defendant's name, terminated by him without notification. In addition, she claimed a vehicle that her mother bought from defendant but remained titled in his name was removed from her home by defendant because he was the only person who had a key to the vehicle.

After plaintiff testified and defendant choose not to testify, the court issued an FRO. In its oral decision, the court stated:

> [Plaintiff's] testimony sounds like harassment.
>
> I note for the record that . . . this [c]ourt extended itself the last time this matter was heard in an attempt

4

to try to resolve the situation without the necessity of going to the extreme of a [d]omestic [v]iolence [r]estraining [o]rder.

I . . . thought I had made it clear to [defendant] that he was not to go back. . . . And I thought I had made it clear to him that he was to have no contact with [plaintiff].

Now, her testimony obviously does not relate back to the original TRO and I . . . thought I had made it clear to [defendant] that he shouldn't have any . . . contact.

. . . .

[W]ith respect to harassment[,] I'm . . . satisfied taking . . . in total, the . . . contact and the effect of the letter, the removal of the vehicle[,] [t]he turning off of the . . . [i]nternet without any notice.

. . . .

The . . . bottom line is [plaintiff] doesn't want to have any contact. She didn't want to be bothered by him anymore. She was nervous out in the matrimonial arena.

. . . .

Now, when we talk in terms of . . . characterizing the relationship, I'm more than satisfied that if you characterize the relationship, well, there was only [d]omestic [v]iolence [r]estraining [o]rder filed early. He's simply not going to give it up. In my mind that's . . . harassment.

5

On this record, we conclude that there was insufficient evidence that plaintiff was harassed because defendant acted with a purpose to harass that included "a communication . . . likely to cause annoyance or alarm" or " alarming conduct . . . with purpose to alarm or seriously annoy." N.J.S.A. 2C:33-4(a), (c). There must be proof that a defendant's conscious object was to "harass," that is, "annoy," "torment," "wear out," or "exhaust." State v. Castagna, 387 N.J. Super. 598, 607 (App. Div. 2006) (quoting Webster's II New College Dictionary 504 (1995)). Our Supreme Court has emphasized the care that a trial court must exercise to distinguish between the ordinary disputes and disagreements between persons in a past or current domestic relationship, and those acts that cross the line into domestic violence. J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011). A plaintiff's assertion of feeling harassed is not sufficient to prove purpose to harass. Id. at 484. As the Court held, a "victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose." Id. at 487.

In J.D., the Court reversed entry of a restraining order where the trial court had failed to find a purpose to harass. Id. at 488. The defendant passed by plaintiff's home in the early morning hours to document her cohabitation with another man, which the defendant intended to use to secure custody of the

A-0248-20

parties' children. Id. at 467-69. Similarly, in L.M.F. v. J.A.F, Jr., 421 N.J. Super. 523, 525, 530-31, 533 (App. Div. 2011), we reversed a finding of harassment where the trial court failed to find that a defendant had the purpose to harass, although he repeatedly sent text messages to his former wife to obtain information about their daughter's academic performance.

In its oral decision, the court stated plaintiff's testimony "sounds like harassment," but failed to make a finding of a purpose to harass. Reviewing defendant's letter, we are persuaded that his sole attempt was to seek reconciliation by stressing his stable relationship with and commitment to plaintiff. Defendant did not threaten plaintiff or her daughter. His termination of the cable and internet service and his apparent taking of the vehicle falls within the scope of "ordinary domestic contretemps." See J.D., 207 N.J. at 475 (quoting Corrente v. Corrente, 281 N.J. Super. 243, 249-50 (App. Div. 1995) (stating that a court must "[d]raw[] the line between acts that constitute harassment for purposes of issuing a domestic violence restraining order and those that fall instead into the category of 'ordinary domestic contretemps[]'")); see also Peranio v. Peranio, 280 N.J. Super. 47, 55 (App. Div. 1995) (finding that regardless of defendant's purpose, the statement "I'll bury you," standing alone, "would not have satisfied the definition of harassment . . . unless it was

A-0248-20

manifested by a course or repeated acts of alarming conduct"). Cancellation of the cable and internet service cancellation is similar to the situation in Corrente, where the defendant first called the plaintiff's job and threatened "drastic measures" if she did not send him money for bills, and then disconnected her home phone line. 281 N.J. Super. at 246-47, 250. We concluded that although plaintiff felt "alarmed" by defendant's behavior, there was not an intent to harass nor could his behavior "be characterized as alarming or seriously annoying." Id. at 249.

With respect to the court's verbal order made at a proceeding prior to the issuance of a temporary restraining order that defendant was to have no contact with plaintiff, there is nothing in the record indicating what the court meant. Therefore, we cannot conclude it was proven that defendant's his conduct violated a court order and was evidence of harassment.

Because we are convinced that there was insufficient credible evidence to support a finding of a predicate act of domestic violence, we need not address the second Silver prong, which requires the court to engage in the separate inquiry regarding the need for restraints to prevent further abuse. See Silver, 387 N.J. Super. at 126-27. Yet, assuming the court's findings were sufficient to establish the harassment, its findings as to the need for restraints is insufficient.

A-0248-20

It is well established that the commission of one of the predicate acts of domestic violence does not, on its own, "automatically . . . warrant the issuance of a domestic violence [restraining] order." Corrente, 281 N.J. Super. at 248. Although that determination "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." Silver, 387 N.J. Super. at 127.

Plaintiff did not testify that she feared defendant, felt in danger of immediate harm, or anything to that effect. The court's mere statement that defendant's "not going to give it up," which could refer to defendant's desire to reconcile with plaintiff, fails to establish plaintiff needed a restraining order to curtail harassing behavior.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0248-20