# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4623-19

P.C.R.,

    Plaintiff-Respondent,

v.

J.H.R.,

    Defendant-Appellant.

_____

> Argued November 9, 2021 – Decided November 24, 2021
>
> Before Judges Haas and Mawla.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-1907-20.
>
> Gerald J. Monahan argued the cause for appellant.
>
> Meghan K. Gulczynski argued the cause for respondent (Northeast New Jersey Legal Services Corp., attorneys; Carol A. Weissman and Meghan K. Gulczynski, of counsel and on the brief).

PER CURIAM

Defendant J.H.R. appeals from a June 26, 2020 final restraining order (FRO), and an August 14, 2020 amended FRO, entered in favor of plaintiff P.C.R. pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. We affirm.

The parties are divorced and have two minor children. Following a May 29, 2020 incident, plaintiff filed a domestic violence complaint and obtained a temporary restraining order (TRO). She later amended the complaint. Plaintiff alleged she went to defendant's residence to drop off the children for parenting time and sent the older child to defendant's front door, while she and the younger child remained in her car. She alleged defendant emerged from his home and without her consent angrily opened the rear car door and grabbed her arm while forcibly removing the younger child. When plaintiff got out of the car, defendant said "I will tackle you if you come onto my property, don't come onto my property." Plaintiff became fearful and called the police.

The complaint pled the following history of domestic violence:

> A. March 2020 – [defendant] refused to return the children to [plaintiff] unless [she] signed [a] document stating that [she] would not leave [the] children with any man unless that man was [a] blood relative.[]
>
> B. November 201[9] when [plaintiff] was dropping [the] children off at [defendant's] residence for parenting time, [she] parked in [defendant's] driveway

[]so [the] children would not go in the street[] and [defendant] came out of the residence angr[y and] proceeded to kick [plaintiff's] car and said that if [she] did not get off his property he would call the police.

C. On or about March [or] April 201[9,] [defendant] sexually assaulted [plaintiff] in her vehicle multiple times after she asked [defendant] to stop and inappropriately touched the [plaintiff] after she repeatedly told [defendant] n[o]. []As a result of this incident, [plaintiff] sought [an] order of protection in [New York] against [defendant].

D. On [or] about [August 26, 2016, defendant] was physically abusive with the [plaintiff] in front of the children (so much so that she obtained [an] order of protection for incident in [New York] State).

E. Since [the parties'] divorce . . . and to [the] present, [defendant] is constantly calling plaintiff derogatory names . . . .

Both parties testified at the FRO hearing.

Plaintiff stated she arrived late to drop off the children for parenting time on May 29. She parked in front of defendant's house and sent the older child to the door to collect a child support check because defendant refused to send her the payments. Defendant "stormed out of his house. . . . His face was flushed. . . . [H]is arms were swinging, and he was walking in a fast pace" and opened the rear driver's side door, where the younger child was seated and began to remove him. Plaintiff repeatedly told defendant to "[p]lease get out of [her] car." Defendant refused, and plaintiff

A-4623-19

reached her left arm over her left shoulder to try to stop defendant from removing the child when defendant grabbed her wrist. Plaintiff felt "pressure" and was "scared." After removing the child, defendant threatened to tackle plaintiff "if [she] set foot on his property." Plaintiff explained she believed he "could carry out that threat . . . [b]ecause of [their] violent past." She was five feet, two inches tall and 115 pounds, and defendant was five feet, nine inches tall and 180 pounds. Plaintiff recorded the incident, which the trial judge found corroborated the aggressive nature of the interaction. The recording also captured defendant's threat to tackle plaintiff.

Plaintiff next testified regarding the prior acts of domestic violence alleged in her complaint. She described the November 2019 incident when she went to defendant's house to pick up the children and parked in his driveway. Defendant emerged from his home, told her to get out of his driveway, and kicked her car. Plaintiff left with the children.

During a parenting time exchange in a parking lot in New York in April 2018, plaintiff permitted defendant to enter her car and sit in the passenger seat because he wanted to talk to her. Plaintiff explained he then "groped [her] vaginal area." She obtained a restraining order in New York, which she later dismissed in order "keep some family peace . . . ."

A-4623-19

In August 2016 plaintiff was lying on her son's bed after putting him to sleep when defendant came into the room. They argued, and he punched her in the right leg. She obtained a restraining order as a result but dismissed it "[b]ecause [she] wanted to work it out with him." Plaintiff testified she was afraid of defendant as a result of their history and because he owned a firearm.

Defendant testified he was not angry during the May 29 incident. He claimed plaintiff texted him prior to the parenting time exchange "saying that [he] should be in jail for not paying her [child support] . . . [and] that [he] was not to have [the] children for nonpayment." He asserted he went to plaintiff's vehicle to assist unbuckling their younger child from his car seat. Defendant claimed plaintiff yelled at him and reached back and grabbed his arm to stop him from removing the younger child. He asserted he threatened to tackle plaintiff in self-defense because she exited the car rapidly and had a history of assaulting him. On cross-examination, defendant admitted having a licensed semiautomatic pistol for "a couple of weeks" until the police seized it pursuant to the TRO.

The trial judge credited plaintiff's testimony. He found defendant entered plaintiff's car, grabbed her arm without justification, and threatened to tackle her. He concluded defendant's conduct during the May incident constituted harassment pursuant to N.J.S.A. 2C:33-4:

A-4623-19

I believe that there was un[-]permissive touching. . . . [I]t was unwanted and unwarranted. . . . [T]he actions of pulling the child out of the car, unbuckling him and pulling out, that was done for the purpose to seriously annoy [plaintiff]. . . . coming out of the [house] and approaching her and getting so close to her was [intended] to seriously annoy her, especially in light of the history between the [parties], [with] two former restraining orders.

Pursuant to Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), the judge found entry of an FRO necessary to protect plaintiff because the parties' history of domestic violence coupled with defendant's access to a firearm showed he posed an immediate danger to plaintiff. The judge entered the FRO.

Defendant moved to vacate the FRO. The judge denied the motion on August 14, 2020, and entered an amended FRO. The amended FRO addressed other relief sought by plaintiff not relevant to this appeal.

Defendant raises the following points on appeal:

I. DEFENDANT'S ACTION IN PUSHING AWAY PLAINTIFF'S LEFT ARM AS SHE TRIED TO INTERFERE WITH DEFENDANT'S SCHEDULED PARENTING TIME CANNOT BE CONSIDERED "OFFENSIVE TOUCHING" WITHIN THE MEANING OF N.J.S.A. 2C:33-4(b).

II. DEFENDANT'S ACTION IN PUSHING PLAINTIFF'S LEFT ARM DID NOT VIOLATE N.J.S.A. 2C:33-4(b) BECAUSE THE DEFENDANT DID NOT ACT FOR THE PURPOSE TO HARASS PLAINTIFF.

6

Our review of "a trial court's fact-finding function is limited." Cesare v. Cesare, 154 N.J. 394, 411 (1998). This is because "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). We "should not disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms, 65 N.J. at 484). We review a trial court's conclusions of law de novo. T.M.S. v. W.C.P., 450 N.J. Super. 499, 502 (App. Div. 2017) (citing S.D. v. M.J.R., 415 N.J. Super. 417, 430 (App. Div. 2010)).

The judge's findings were predicated on N.J.S.A. 2C:33-4(b) and (c), which define harassment as follows: "b. Subject[ing] another to striking, kicking, shoving, or other offensive touching, or threaten[ing] to do so; or c. Engag[ing] in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." Our Supreme

Court has stated "[a] finding of a purpose to harass may be inferred from the evidence presented [based on c]ommon sense and experience . . . ." State v. Hoffman, 149 N.J. 564, 577 (1997) (citations omitted). The Court also stated: "Subsection (b) . . . deals with touchings or threats to touch, and it does not require the intended victim to be annoyed or alarmed." Id. at 580. Further, "serious annoyance under subsection (c) means to weary, worry, trouble, or offend." Id. at 581.

We are convinced the record supports the finding defendant committed offensive touching. Moreover, defendant's threat to tackle plaintiff met the definition of harassment under N.J.S.A. 2C:33-4(b), which includes a threat to strike, kick, shove, or commit an offensive touching.

We are also persuaded the record supported a finding defendant intended to harass plaintiff. The parties' history of domestic violence not only encompassed defendant calling plaintiff vulgar names, but also physically and sexually assaulting her, including during parenting time exchanges. This behavior and defendant's conduct on May 29 supported an inference he acted with the purpose to harass plaintiff when he grabbed her arm. He was not merely seeking to remove the child in order to enjoy parenting time. An FRO was necessary to stop the cycle of domestic violence.

A-4623-19

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

9