# RECORD IMPOUNDED

### NOT FOR PUBLICATION WITHOUT THE
### APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1732-20

M.M.,[1]

    Plaintiff-Respondent,

v.

B.J.D.,

    Defendant-Appellant.

_____

Argued November 1, 2021 – Decided December 1, 2021

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FV-15-1776-20.

Ehsan F. Chowdhry argued the cause for appellant (E. F. Chowdhry Law Practice, LLC, attorneys; Ehsan F. Chowdhry, of counsel and on the brief).

Benjamin J. D'Alessio argued the cause for respondent (South Jersey Legal Services, Inc., attorneys; Benjamin J. D'Alessio and Cheryl Turk Waraas, on the brief).

_____

[1] We use initials in this domestic violence case to protect the parties' privacy. R. 1:38-3(b)(12).

PER CURIAM

In this domestic violence case, defendant B.J.D. appeals a final restraining order ("FRO") entered in favor of plaintiff M.M., his estranged wife, after a one-day trial conducted remotely via Zoom in the Family Part. Both parties are represented on appeal by the same lawyers who represented them at the FRO trial.

The parties are both in their fifties and have known one another since high school. Over three decades later, they reestablished contact and began dating in 2015. They married on New Year's Eve in December 2019, but continued to maintain separate residences.

In March 2020, about two months after the wedding, plaintiff decided to end the relationship. Although it is not one of the two predicate acts that supported the FRO, on March 4, 2020 defendant admittedly ran his car over plaintiff's foot as she emerged from a bank where she went to close the couple's joint account. Defendant contended this was accidental, and plaintiff did not press charges.

Following the March 4 incident, defendant began repeatedly contacting plaintiff through text messages, phone calls, and Facebook. Plaintiff asserts that defendant sent her over 300 messages, with content ranging from amicable and

2

endearing words to hostile and threatening ones.  The threatening messages included defendant telling plaintiff he was "not going to make this easy for [her]," that he would "embarrass" her and "drag" her through the court system and "cost [her] as much money as [he] possibly can."

Plaintiff presented evidence that she replied to defendant, "stop texting me" and "[l]eave me alone."  Despite defendant's persistence, plaintiff declined to reconcile and move in with him, telling him  "I can not live in fear."

The three text messages at the heart of this case were sent between early March 2020 and May 16, 2020.  On March 8, defendant texted plaintiff, "Hello my wife. Just curious who is the man at your house on a Sunday."

The second key text, sent on April 19, read, "You don't know how horrible I have felt about your foot.  How many times I came to your house but never let you know.  That night, the next day.  Many times."

The third key text message, dated June 7, intimated that defendant would commit suicide if plaintiff did not reconcile with him.  Defendant stated "I almost bl[ew] my brains all over your front porch last night . . . Maybe I'll have the courage to do it soon then you can feel the same sorrow and heartache that I do."

A-1732-20

The suicidal threat prompted plaintiff to obtain a temporary restraining order ("TRO") against defendant that same day. Five days later, on June 12, plaintiff saw defendant at a lake near her house. Defendant lived on the other side of the lake, and therefore ordinarily would not access the area from the plaintiff's side. The following day, plaintiff's surveillance camera filmed defendant's car driving past her house.

Thereafter, in early August 2020, a neighbor showed plaintiff a video from his own surveillance camera depicting defendant crouching down below the neighbor's window. Although defendant denied he was the man shown "skulking" in the video, both plaintiff and the neighbor identified him as the same person.

After reporting the "skulking" incident to the police, plaintiff discovered a hole had recently been created in a fence on her property, and that her pool's aluminum railing had been cut.

Plaintiff, her neighbor, and defendant testified at the FRO trial. The evidence also included: numerous text messages and Facebook messages; the surveillance videos, photos of plaintiff's injured foot in the ambulance, the pool railing damages, the fence damage, and defendant's vehicle in her driveway or going past her house.

4

Plaintiff testified she was "[a]bsolutely terrified" of defendant, and needed an FRO to protect her from future harm. Defendant's testimony attempted to portray his actions as benign efforts to reconcile their relationship and continue their marriage, which had only begun a few months earlier.

The trial judge found plaintiff's testimony to be credible, describing it as "direct" and "unwavering." The judge further noted plaintiff "didn't contradict herself" and "didn't embellish." By contrast, the judge found defendant "not credible," observing that he was "evasive[] and not direct." The judge noted his "responses seemed to … dance around the question" and reflected "a lack of candor with the [c]ourt."

In her oral opinion, the Family Part judge concluded plaintiff had proven both prongs of the domestic violence statute, N.J.S.A. 2C:25-19, by a preponderance of the evidence. First, the judge found defendant had committed the predicate act of harassment, in the form of the numerous unwanted and alarming messages, including the suicide threat. The court also found that defendant had committed the predicate act of contempt[2] by stalking plaintiff

---

[2] We were advised by counsel at oral argument that the County Prosecutor's Office dismissed the criminal contempt charges against defendant. Hence, we consider contempt in this case only in a civil sense, as a predicate act to support the FRO.

A-1732-20

after she had obtained the TRO. The judge expressed concerns about the post-TRO property damage to the fence and the pool, although she did not specifically find that defendant had caused it. Second, the judge found that plaintiff was in need of future protection, and that she was understandably "scared to death."

On appeal, defendant argues the trial court lacked sufficient evidence to support both prongs of the statutory test, as elaborated in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006) (requiring a plaintiff to establish (1) one or more predicate acts of domestic violence and (2) the necessity for future restraints). Defendant asserts plaintiff "admitted that [he] was trying to fix the marriage" and that she embellished her narrative of the events. He suggests plaintiff married him only for her financial benefit, to get health benefits and work less, and that she was misusing the domestic violence case to "gain advantage," as this court has suggested happens at times in the matrimonial context. See Silver, 387 N.J. Super. at 124.

Defendant further claims the trial court failed to specify which subsection of the harassment statute, N.J.S.A. 2C:33-4, had been proven. He downplays the suicidal text as bespeaking a person who is mentally distraught from the end of a marriage, as well as having problems at work.

6

As to contempt, defendant argues he had merely been walking near plaintiff's house, and that there is no evidence he had been the person who damaged the fence and the pool deck. On prong two of Silver, defendant argues there is no need for restraints, pointing out that plaintiff had not blocked his messages on her phone.

It is well established that an appellate court's review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). Upon reviewing an order following trial in a domestic violence matter, we must grant substantial deference to "the trial court's findings of fact and the legal conclusions[.]" Id. at 411-12. Deference is especially important where evidence is testimonial and involves credibility issues because the observing judge "has a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (citations omitted). Our "role is one of determining whether the trial judge's inferences were rationally based on evidence in the record." State v. Avena, 281 N.J. Super. 327, 340 (App. Div. 1995). Thus, a reviewing court should not disturb the "factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably

A-1732-20

credible evidence as to offend the interests of justice[.]" <u>Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.</u>, 65 N.J. 474, 484 (1974) (citations omitted).

Having reviewed the record and defendant's arguments in light of these deferential standards of review, we affirm the entry of the FRO against defendant. We do so substantially for the sound reasons articulated on the record, both during and after the trial, by Judge Patricia E. Carney.

We give particular regard to the judge's pointed credibility findings in favor of plaintiff. As to substance, there is ample evidence that defendant committed predicate acts of harassment, as defined in N.J.S.A. 2C:33-4. Pursuant to subsection (a) of the statute, an individual harasses another if he "[m]akes…a communication…at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm" with the purpose to harass. N.J.S.A. 2C:33-4(a). Under subsection (a), "there need only be proof of a single communication." <u>J.D. v. M.D.F.</u>, 207 N.J. 458, 477 (2011). Under subsection (c) of the statute, harassment can also take the form of an individual "[e]ngag[ing] in…alarming conduct or repeatedly commit[ting] acts with purpose to alarm or seriously annoy[.]" N.J.S.A. 2C:33-4(c). Subsection (c) "requires proof of a course of conduct." <u>J.D.</u>, 207 N.J. at 478.

In denying defendant's motion to dismiss the case at the close of plaintiff's proofs, the trial judge clearly specified that the evidence showed harassment under both subsections (a) and (c) of the statute. either of which can suffice. We agree with that assessment.

Defendant's text threatening to "bl[ow] his brains out" at plaintiff's residence is a sufficiently alarming communication to satisfy subsection (a). In addition, the other text messages that defendant persisted in sending plaintiff even after she urged him to stop reflect a course of harassing conduct that establishes subsection (c). Although the judge did not repeat her references to the subsections in her final oral decision, it is implicit that defendant's testimony, which she found incredible, did not alter her earlier findings.

Moreover, defendant's violation of the TRO in going near plaintiff's dwelling, as substantiated by the surveillance video recordings, is a separate predicate act that independently supports prong one of Silver.

The necessity for future restraints under Silver prong two is self-evident from the circumstances. It is also directly supported by plaintiff's credible testimony expressing her ongoing fear of defendant, and her installation of additional security cameras at her residence because of his past failures to stay away from her. We are cognizant that defendant is disappointed that their short

9

marriage failed and that he wished to reconcile with plaintiff, but he must obey court orders to leave her alone.

All of defendant's other points, which we have duly considered, lack sufficient merit to warrant discussion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1732-20