# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0457-20

I.M.,

    Plaintiff-Appellant,

v.

E.S.-P.,

    Defendant-Respondent.

_____

              Argued November 3, 2021 – Decided March 17, 2022

              Before Judges DeAlmeida and Smith.

              On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-2777-20.

              Cynthia M. Vera argued the cause for appellant (Saiber LLC, attorneys; Cynthia M. Vera, on the briefs).

              Thomas F. Verrastro argued the cause for respondent.

PER CURIAM

After a trial, plaintiff appeals from the denial of her application for a final restraining order (FRO) under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Plaintiff argues the court erred in its analysis of the second prong of Silver[1] when it failed to issue an FRO given the ample evidence in the record. We reverse the order of the trial court and remand for entry of a FRO against defendant.

Plaintiff and defendant began dating in June 2018, though they have known each other since 2013. The parties have one minor child in common, who was born in May 2019. In July 2018, the parties began living together until November 2018 when they separated. From that point until the incident which led to this complaint, the parties were in an on-again, off-again relationship. They occasionally co-habited during this period.

On March 10, 2020, defendant went to plaintiff's home for an unscheduled visit with their then ten-month-old child. After defendant spent about thirty minutes with the child, plaintiff asked him to leave. Initially, defendant handed the child back to plaintiff but then grabbed the infant from plaintiff's arms and sat on the couch. Plaintiff attempted to take the child back, but defendant pushed plaintiff and punched her with his fist, striking her in the nose twice. Defendant

_____

[1] Silver v. Silver, 387 N.J. Super. 112, 123 (App. Div. 2006).

A-0457-20

was holding the baby when he struck plaintiff. When plaintiff reached for the baby again, defendant bit her left index finger and held the finger between his teeth as he got up from the couch. Eventually, defendant let go of plaintiff's finger and grabbed plaintiff by the neck and pushed her onto the couch. He finally handed the infant back to plaintiff and left the home.

Two hours later, plaintiff went to the Nutley Police Department to report the assault and obtained a TRO against defendant. Criminal charges were also filed against defendant. The record shows that as a result of this violent confrontation, plaintiff received treatment for a broken nose, scratches, bruises, as well as an infected index finger which had become swollen.

After defendant was served with the TRO, the record shows he called plaintiff dozens of times over the next several weeks, sometimes several times in a day. He went to plaintiff's home once, leaving before police could arrive. Plaintiff amended the TRO multiple times, including the allegations of harassment and contempt to the complaint. Twice during this period, plaintiff texted photographs of their child to defendant at his request.

The trial took place over three days in August, September, and October 2020. The court made findings, concluding that plaintiff was "very credible, even . . . extremely credible." The trial court found defendant to be "less

credible." Examining the record, including the parties' testimony as well as photographs of plaintiff's injuries, the court found that defendant had committed the predicate acts of simple assault, N.J.S.A. 2C:12-1(a), harassment, N.J.S.A. 2C:33-4(b), and contempt, N.J.S.A. 2C:29-9.

Having found three predicate acts, the court next moved to determine whether it should enter a final restraining order. The court stated that it was "not convinced" by plaintiff's testimony that she sought an FRO out of her fear of the defendant. In support, the court cited communications from plaintiff to defendant during the pendency of the TRO to facilitate defendant's parenting time with the child. The court did find multiple acts of "assault and . . . other acts of domestic violence" took place against plaintiff in 2018 and 2019, but nonetheless concluded that there were sufficient "processes and procedures" that could be "put in place" to protect plaintiff and the child without the imposition of an FRO. Plaintiff appealed.

Generally, our scope of review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We owe substantial deference to the Family Part's findings of fact because of its special expertise in family matters. Id. at 413. Deference is especially appropriate in bench trials when the evidence is "largely testimonial and involves questions of credibility." Id. at 412 (citations

omitted). A trial judge who observes witnesses and listens to their testimony is in the best position to "make first-hand credibility judgments about the witnesses who appear on the stand . . . ." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008). We will not disturb a trial court's factual findings unless "they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). However, we do not accord such deference to legal conclusions and review such conclusions de novo. Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

To determine whether the entry of an FRO is appropriate, the court must first "determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Silver, 387 N.J. Super. at 125.

If the court finds defendant committed a predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Id. at 126. While the second inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set

forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127.

There is no appealable issue before us, nor any dispute in the record concerning predicate acts, therefore we turn to the question of "whether the court should enter a restraining order that provides protection for the victim." Id. at 126.

The record shows the extensive history of domestic violence between the parties, going back to the beginning of their dating relationship in 2018. The record further revealed five separate incidents where she was physically assaulted by defendant, starting in July 2018 and leading up to the violent confrontation of March 2020. During those five assaults, defendant twice choked plaintiff, ripped off one of her fingernails in a tussle, slammed her head into a vehicle dashboard, and on a separate occasion, into a door frame, and scratched and bruised her repeatedly. He subjected her to verbal abuse, calling her a "bitch" and "ugly." Ironically, the trial court noted what it called "multiple" assaults and "other acts of domestic violence" during the years leading up to the March 2020 assault. During that assault, plaintiff testified that she heard "bones cracking" after defendant punched plaintiff in the face.

A-0457-20

Plaintiff testified concerning her fear of the defendant and what he might do to her and the child.

> Counsel: Why do you feel you need a final restraining order?
>
> Plaintiff: I just don't want anything like this to happen again and I generally don't feel safe around [defendant] anymore.
>
> Counsel: [Want] what to happen again?
>
> Plaintiff: Me getting injured or any more of my bones getting broken.

Nonetheless, the trial court found that plaintiff had failed to prove by a preponderance of the evidence that she was "in real fear for her life, or her health, or her safety, or her welfare, or that of her child," at the hands of defendant.

Our review of the record leads us to conclude that the trial court's findings are "manifestly unsupported by [and] inconsistent with the competent, relevant and reasonably credible evidence" in this matter. Cesare, 154 N.J. at 412 (citation omitted). For reasons unclear to us, the trial court found plaintiff credible, but then elected to disregard detailed and graphic evidence of the serious injuries she suffered at the hands of defendant over a period of nearly two years. The record further shows that the trial court failed to perform a

7

thorough review of the six non-exhaustive factors listed in N.J.S.A. 2C:25-29, which a court shall consider in determining whether a final restraining order must issue. This combination of errors led to the court's order denying the FRO and dismissing plaintiff's complaint, an order that we find offends the interests of justice. We are satisfied that there was sufficient credible evidence in the record to require an FRO to protect plaintiff from immediate danger and further abuse.

We reverse and remand to the trial court for entry of an FRO with appropriate protections.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0457-20