# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3207-24

S.C.,

     Plaintiff-Respondent,

v.

M.W.C.,

     Defendant-Appellant.

_____

Submitted January 28, 2026 – Decided February 27, 2026

Before Judges Currier and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FV-03-2092-25.

Jordan B. Rickards, attorneys for appellant (Jordan B. Rickards, on the brief).

Respondent has not filed a brief.

PER CURIAM

Defendant M.W.C.[1] appeals from a final restraining order (FRO) entered against him pursuant to the Prevention of Domestic Violence Act of 1991 (PDVA).[2] Defendant contends the trial court erred by making unsupported Silver[3] prong one and two findings. Based upon our review of the record and applicable law, we affirm.

I.

Plaintiff S.C. and defendant M.W.C. are siblings and former household members. The two had no direct contact for approximately fifteen years due to ongoing conflict between them related to plaintiff's allegations that defendant, among other things: sexually and physically abused her as a child; hit her daughter previously; and made inappropriate comments toward her. Though the parties have not spoken directly, their parents have shared information and messages between the two, even when the parties did not intend to communicate with each other. Despite no verbal communication, the parties continue to see each other at family events.

---

[1] We refer to the parties using their initials to protect their privacy and the confidentiality of these proceedings. R. 1:38-3(d)(9).

[2] N.J.S.A. 2C:25-17 to -35.

[3] Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

Defendant claimed their parents informed him approximately three years ago that plaintiff alleged he sexually and physically abused her as a child.  In 2024, as tensions rose surrounding these allegations, the parents asked plaintiff to speak with defendant directly about them.  She declined.  Upon learning of plaintiff's response through his parents, defendant texted plaintiff the following three messages on April 15, 2024, at 1:19 p.m.:

> A hypocrite is what you are.  Come and show your face, you sh[**]ty b[***]h. You're just like the chickens giving your a[**] to anybody.[4]

Plaintiff blocked defendant's phone number after receiving these messages.

Plaintiff sought a Temporary Restraining Order (TRO) on May 2, 2025. In her complaint, she alleged the predicate act of harassment, citing defendant's text messages to her.  She alleged a history of domestic violence against her by defendant, asserting that he engaged in years of sexual abuse and physical intimidation against her from childhood, and had previously slapped her young daughter and assaulted plaintiff when she attempted to stop him.  She also alleged that her parents sided with defendant, insisting that she talk to him, without her husband present.  Finally, plaintiff stated in her complaint that she

---

[4]  The contents of the messages were translated from Spanish during trial, and the English translation is reproduced here.

3

was "scared of defendant," because of his anger with her, as manifested by his repeated attempts to reach her through their parents. Plaintiff amended the TRO on May 27, alleging that defendant had contacted her through her parents, "telling [plaintiff] that she needs to speak with her brother . . . ." Plaintiff also alleged that defendant was verbally and physically abusive towards their mother.

The FRO trial took place on June 4, 2025. Three witnesses testified: plaintiff, her husband, and defendant.

The trial court found plaintiff credible, stating:

> I found that the plaintiff was credible in her testimony. She testified with great emotion. She cried, she paused, she was unable to sometimes even complete her sentences. There is nothing about the content of her testimony or her demeanor that would cause the [c]ourt to discredit it . . . .

The court made findings on the predicate act of harassment, stating:

> The defendant [sends a] series of text messages that he doesn't deny to the plaintiff on April 15th between 1:19 p.m. and 1:21 p.m.
>
> . . . .
>
> He is upset because of the allegations the plaintiff is making against him. He denies the allegations, but the purpose of sending those messages; he's upset . . . that she doesn't confront him and meet with him, so he sends her a message that says, "Come and meet me, you sh[***]y b[***]h, again, you're like a chicken giving you're a[**] to everyone, you're a hypocrite."

4

So whether it's true or not[,] he's getting the plaintiff to try and meet with him. He's trying to get the plaintiff to come and say these things to his face. And within the context of this entire situation and the fact that this is about the plaintiff alleging that she is sexually abused, the text is particularly calculated to be annoying because it is a sensitive subject for the plaintiff and just the sexual overtone of the message, given the sensitive subject that it is for the plaintiff again, the [c]ourt finds to be calculating and that it is done to be annoying, given the sensitive nature for this plaintiff.

[Emphasis added.]

Continuing its predicate act analysis, the court then found:

So, the [c]ourt does find . . . not only . . . that [defendant] engaged in the course of conduct with the purpose to alarm or seriously annoy such other person which the courts have defined as to weary, to worry, and to trouble . . . it's also harassment under subsection (a) of the statute[,] that is a communication that is made [with a] purpose to harass in a manner that would cause annoyance and or alarm given the nature and content of those messages . . . .

Moving to prong two of Silver, the court found plaintiff had a continuing need for protection. It stated:

The [c]ourt finds that without this restraining order, given the constant communication that the defendant says the family is having with him, his upsetness [sic] about these allegations, his wanting the plaintiff to reach out to him, him reaching out to the plaintiff after [fifteen] years, [there is] no doubt that without this restraining order[,] this defendant is still going to be in

5

> contact with the plaintiff, regarding these allegations, she's alleging occurred in their childhood.

The trial court granted the FRO, prohibiting defendant from contacting plaintiff or visiting her residence and place of employment. Defendant appealed, contending that: plaintiff failed to prove the predicate act of harassment and to show that she needed ongoing protection; and that, in any event, his admitted conduct was de minimis.

## II.

Our limited scope of review in domestic violence cases is well established. "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)).

Deference is particularly warranted where "the evidence is largely testimonial and involves questions of credibility." C.R. v. M.T., 257 N.J. 126, 139 (2024) (quoting MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007)). Such findings become binding on appeal because it is the trial judge who "sees and observes the witnesses," thereby possessing "a better perspective than a reviewing court in evaluating the veracity of witnesses." Gnall v. Gnall, 222

6

N.J. 414, 428 (2015) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). It follows that we will not disturb a trial court's factual findings unless convinced "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." State v. Burkert, 231 N.J. 257, 288 (2017) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)).

Consequently, "findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence." Gnall, 222 N.J. at 428. We do not, however, accord such deference to the court's legal conclusions, which are reviewed de novo. M.A. v. J.H.M., 260 N.J. 522, 532 (2025).

## III.

## A.

Defendant contends the evidence adduced at the FRO hearing did not support the finding of a predicate act against him, as required by Silver's first prong, or a continuing need for a restraining order to protect plaintiff from further abuse under Silver's second prong. We are unpersuaded.

In J.D. v. A.M.W., 475 N.J. Super. 306, 313-14 (App. Div. 2023), we recited our well-settled analytic framework for domestic violence complaints:

> In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver, 387 N.J. Super. at 125.

7

The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a). If a predicate offense is proven, the judge must then assess "whether a restraining order is necessary, upon an evaluation of the [factors] set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." M.D.F., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at 127). The factors which the court should consider include, but are not limited to:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; and
>
> (6) The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a).]

[(Alterations in original) (citations reformatted).]

8

Harassment, prohibited by N.J.S.A. 2C:33-4, is a predicate act of domestic violence.  N.J.S.A. 2C:25-19(a)(13).

> [A] person commits [the predicate act of harassment] if, with purpose to harass another, [the person]:
>
>> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>>
>> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>>
>> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4(a) to (c).]

Our Supreme Court has found that "[n]ot all offensive or bothersome behavior . . . constitutes harassment." J.D., 207 N.J. at 483.  "The mere exposure to profanity, though irritating to many people, is not necessarily indicative of an intention to harass," and "mere venting of frustration or irritation at the situation is insufficient by itself to constitute harassment."  State v. Duncan, 376 N.J Super. 253, 263-64 (App. Div. 2005).

9

While we note that we must guard against "overextending a criminal statute to rude behavior . . .," our Supreme Court has also found "[t]he smallest additional fact or the slightest alteration in context, particularly if based on a history between the parties, may move what otherwise would appear to be non-harassing conduct into the category of actions that qualify for issuance of a restraining order." M.D.F., 207 N.J. at 483-84. "[A] purpose to harass can be inferred from a history between the parties." Id. at 487. That said, a victim's subjective reaction alone will not suffice unless there is evidence of improper purpose. Ibid.

Turning to the record, defendant argues that his text messages are not harassing because: they were not anonymous; they did not occur at extremely inconvenient hours; they did not threaten violence; they were a single isolated incident, not part of a pattern intended to annoy or cause alarm; and because plaintiff's subjective belief that the text messages threatened violence were meritless and self-serving. Further, defendant argues that much of the domestic violence history plaintiff supplied in her TRO complaint and at trial was unproven and outdated information which should not have been considered by the trial court.

The record shows that the trial court did not attempt to discern the veracity of plaintiff's allegations. Instead, the court considered the context in which the allegations were made and assessed the continued impact plaintiff's allegations had on the parties and their larger family. Consistent with the analysis required by <u>M.D.F.</u>, the court considered the parties' underlying history of prolonged alleged sex abuse, followed by fifteen years of no-contact, and found defendant's profane and sexually explicit texts were "particularly calculated to be annoying." As the finder of fact, the trial court inferred that defendant's act of sending three consecutive texts evinced his intent to show his anger with plaintiff as well as demonstrate his insistence on seeing her in person. The court found that his acts, taken in context with the entire record, caused alarm and worry to plaintiff.

The record shows defendant's texts were not merely rude behavior. They were intended to insult, ridicule, and provoke a physical confrontation. Given defendant's awareness of plaintiff's allegations against him, sending text messages insulting her and invoking her sexual habits supports the purpose to harass using sensitive information from their past. The trial court's findings that these texts satisfied N.J.S.A. 2C:33-4(a) and (c) and constituted the predicate act of harassment are sufficiently supported by the record.

A-3207-24

Deference is particularly warranted where "the evidence is largely testimonial and involves questions of credibility." C.R., 257 N.J. at 139 (quoting MacKinnon, 191 N.J. at 254). We cannot conclude that the trial court's findings were "so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." State v. Burkert, 231 N.J. at 288. Consequently, we defer to the court's finding that plaintiff proved harassment as a predicate act by a preponderance of the credible evidence. We discern no error.

B.

Once a predicate act is proven by the preponderance of the credible evidence, the court must then assess the second prong of the Silver test, "whether a restraining order is necessary, upon an evaluation of the [factors] set forth in N.J.S.A. 2C:25-29(a)(1) to [](a)(6), to protect the victim from an immediate danger or to prevent further abuse." M.D.F., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at 127).

Defendant contends plaintiff failed to establish immediate danger or a continuing need for protection from further abuse. We are not convinced.

We consider the relevant law. In N.G. v. J.P., 426 N.J. Super. 398 (App. Div. 2012), we affirmed the trial court's grant of an FRO where the parties were

12

siblings who had not lived together since the 1960s but had an acrimonious family relationship that led to sporadic harassment. As here, the plaintiff in N.G. alleged defendant physically abused her as a child and feared him as an adult. Id. at 403-04. The defendant resorted to picketing and protesting outside of the plaintiff's home, chanting threatening and insulting statements on twenty-nine occasions. Id. at 404-05. The defendant also lunged at the plaintiff in court causing him to be escorted out by police just before their TRO hearing. Id. at 406. The trial court granted an FRO at the conclusion of the hearing. Id. at 407.

On appeal, we considered whether the plaintiff had demonstrated the continuing need for an FRO. Id. at 415. We found the defendant's own testimony showed his continued hostility for the plaintiff and he did not dispute her testimony that he intended to "hound [her] until the grave." Ibid. (alteration in original). We affirmed the decision to grant the FRO, finding a high likelihood of persistent domestic violence. Ibid.

Conversely, FROs have been denied in scenarios where harassment occurred, but the plaintiff did not provide evidence of immediate danger to plaintiff's person or property. E.W. v. W.M-H., 476 N.J. Super. 433 (Ch. Div. 2023). In E.W., the court found the defendant harassed the plaintiff when he made a false complaint against her with the New Jersey Division of Child

Protection and Permanency. However, once this was resolved, the court did not find that the plaintiff's person or property was in immediate danger, or that an FRO was needed to prevent further domestic violence. The court noted the short-lived nature of the parties' relationship, the absence of children in common, and a financial dispute between the parties scheduled to be resolved in another forum. Id. at 446-47.

Here, defendant's alleged conduct falls between the two extremes in N.G. and E.W. Like N.G., plaintiff alleges abuse from childhood and a continued strained relationship into adulthood. The record shows a history of domestic violence, including: at least one physical altercation where police were called; fraught interactions with family, including interactions where family members asked plaintiff to meet defendant without her husband present; and now defendant's text messages demanding plaintiff meet him in person.

Having the benefit of the entire record, including witness testimony, the trial court found a continuing need for protection, given the complex family dynamic, which seems to encourage contact between plaintiff and defendant against her wishes and despite her serious allegations, and the evidence in the record which could lead a reasonable factfinder to infer defendant's conduct was escalating.

Given that we defer to the trial court where "the evidence is largely testimonial and involves questions of credibility," C.R. v. M.T., 257 N.J. at 139, we conclude that the trial court did not err when it found plaintiff had met her burden by a preponderance of the evidence to show that she has satisfied prong two of Silver.

Because the Family Part "sees and observes the witnesses," and has a "better perspective than a reviewing court in evaluating the veracity of witnesses," Gnall, 222 N.J. at 428, we defer to its expertise in domestic violence matters, C.R., 257 N.J. at 139. Understanding that the trial court had the better perspective, as well as a fulsome grasp of the family context and history between the parties, we exercise our deference here.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division